**UNITED STATES, Appellee,**

v.

**Ronny L. LAWSON, Private, U.S. Army, Appellant.**

No. 41,731.

CM 440520.

U.S. Court of Military Appeals.

July 5, 1983.

For Appellant: *Captain James A. Mc-Atamney* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert,* and *Major Joyce E. Plaut* (on brief); *Colonel William G. Eckhardt.*

For Appellee: *Captain David H. Johnson,* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards,* and *Captain Kenneth H. Clevenger* (on brief); *Captain Daniel S. Velling.*

*Opinion of the Court*

EVERETT, Chief Judge:

On October 30 and 31, and November 1, 1980, Private Lawson was tried at Fort Belvoir, Virginia, by a general court-martial composed of officer and enlisted members. In accordance with his pleas, he was found guilty of resisting apprehension, reckless driving, and absence without leave, in violation of Articles 95, 111, and 86 of the Uniform Code of Military Justice, 10 U.S.C. §§ 895, 911, and 886, respectively. Contrary to his pleas, he was found guilty of one specification of carnal knowledge, in violation of Article 120, U.C.M.J., 10 U.S.C. § 920. His sentence was a dishonorable discharge, confinement at hard labor for 5 years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1.

The convening authority approved Lawson's sentence and the United States Army Court of Military Review [1] affirmed the approved findings and sentence without opin-

---

1. The decision of the Court of Military Review, GCMO No. 1 (except for the action of the convening authority), and numerous documents in the record erroneously reflect appellant's first name as "Ronnie." The correct spelling is "Ronny." (*See* R. 329–30, Pros.Ex. 10, and App.Ex. I.)

ion. We subsequently granted review of this issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY INSTRUCTING THE COURT THAT IT COULD TAKE UNOFFICIAL VOTES DURING ITS DELIBERATIONS ON FINDINGS AS TO CHARGE III AND ITS SPECIFICATION (CARNAL KNOWLEDGE).

## I

During his instructions on findings as to the charge of carnal knowledge, the military judge explained the voting procedures which the court members must follow during their deliberation in the jury room. In doing so, he impressed upon the court members that

the influence of superiority in rank will not be employed in any manner in an attempt to control the independence of the members in the exercise of their own personal judgment. Your deliberation should properly include a full and free discussion of all the evidence that has been presented. After you have completed your discussion, then voting on your findings must be accomplished by secret written ballot, and all members of the court are required to vote. You vote on the specification under the charge before you vote on the charge. If you find the accused guilty of the specification, then the finding as to that charge is guilty. The junior member collects and counts the votes, the count is checked by the president who immediately announces the result of the ballot to the members. The concurrence of at least two-thirds of the members present when the vote is taken is required for any finding of guilty. Since we have 7 members, that means under our peculiar mathematics, that 5 members must concur in any finding of guilty.

A finding of not guilty results if no other valid finding is reached. All that means is that when you vote, if fewer than 5 of the members vote guilty, then your ballot

has resulted in a finding of not guilty as to that specification.

You may reconsider any finding prior to its being announced in open court, and you may reconsider any finding of guilty prior to a sentence being announced. However, after you vote, if any member desires to reconsider any finding, open court and I'll give you specific instructions on how to do that. What is involved is some very complicated instructions and I won't burden you with those unless that should become necessary.

Then, after completing his instructions on findings, the military judge asked if "counsel for either side have any objection to the instructions given or do you have any request for additional instructions not already made?" After both counsel responded in the negative, the judge inquired, "Does any member of the court have any questions concerning my instructions?" Thereupon, the court's president asked, "Who did you say counts the ballots?"; and the military judge replied:

The junior member collects and counts the votes, the count is then checked by the president who immediately announces the result of the ballot to the members.

Following those instructions, the court took a short recess and, after they had reconvened, the president inquired whether "[t]o convict it has to be two-thirds or 5 members?" Upon receiving an affirmative answer, the president asked, "To acquit does it also have to be 5?" The judge then explained:

If you do not convict, then you automatically acquit.

\* \* \* \* \* \*

A finding of not guilty results if no other valid [sic] is reached. And what I mean by that is that when you vote, if fewer than two-thirds or 5 of the members vote guilty, then your ballot has resulted in a finding of not guilty as to the specification.

He added:

Then, I went on and I talked to you about reconsideration. If you desire to do that,

then please open the court and I will give you the instructions on how to do that.

Finally, the president asked; "*Are we permitted only one ballot or can we have [sic] ballot to ascertain how the feeling is going?*" The judge responded that "*if you want to have some trial ballots without those being binding, I see no objection to that, to take a straw poll.*" (Emphasis added.) Thereafter, the judge immediately inquired of the defense counsel, "Is there any objection to that, Captain Boyer?"; and the answer was in the negative. Likewise, the prosecutor stated he did not object. Even though neither counsel objected to the instruction, the military judge still cautioned the court members, "You should make it clear whether you are taking a straw poll or whether you are formally voting on the charge." After the court members indicated that there were no other questions, the court closed for deliberation and only reopened for the court members to announce their findings.

## II

Article 51(a) of the Code, 10 U.S.C. § 851(a), requires that "[v]oting by members of a general or special court-martial on the findings and on the sentence ... shall be by secret written ballot." The purpose of this provision can be easily surmised. A secret ballot helps prevent the exercise of direct or indirect influence by the use of rank, since the junior members do not know how the senior members have voted and vice versa. Indeed, since, other than in capital cases, unanimity is not required in the findings and sentence decided upon by court-martial members, as has traditionally been required in civilian jury verdicts, the point is never reached at which a court member must affirm that he concurs in a particular finding or sentence.

Both as to findings and sentence, the Manual for Courts-Martial directs that, "[t]he influence of seniority in rank shall not be employed in any manner in an at-

tempt to control the independence of members in the exercise of their judgment." Paras. 74*d*(1) and 76*b*(2), Manual for Courts-Martial, United States, 1969 (Revised edition). As its ranking member, the president of a court-martial is the person who would be in the best position to inhibit the independent judgment which the draftsmen of the Code and the Manual expected each court member to exercise. Therefore, our Court has sought to eliminate any opportunity for the president of a court-martial to exercise inordinate influence upon the deliberations of the court-martial members. Thus, consistent with the intent of Article 37 of the Code, 10 U.S.C. § 837, we found unacceptable the practice of appointing as the permanent president of a court-martial a flag officer who prepared efficiency or fitness reports on other permanent members. *United States v. Deain*, 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954). Likewise, in *United States v. Nash*, 5 U.S.C.M.A. 550, 18 C.M.R. 174 (1955), we ruled that the president of a court-martial could not compel reballoting by the members, and that instead they must determine whether they wished to reconsider a finding or sentence.[2]

Despite the Manual's prohibition against use "of superiority in rank ... to control the independence of" judgment of court members, we cannot deny that considerations of rank may have, at least, an unconscious effect upon the deliberations of a court-martial. Typically there will be some discussion among court members as to the facts of a case, and it is hard to imagine how, in speaking about the facts, a member could completely conceal his views. Indeed, there is no Manual or codal prohibition of such disclosure, so long as a member does not seek to use his superiority of rank to obtain acceptance of his views. In view of the realities of a hierarchical society, in which giving respect and obedience to superiors is encouraged, it would be amazing if sometimes there was not a spillover into the

---

**2.** In amending the Code in 1968, Congress for the first time made specific provision for the number of votes required to reconsider findings or sentence. *See* Article 52(c), Uniform Code of Military Justice, 10 U.S.C. § 852(c).

deliberations of a court-martial. If a junior court member finds the views of a superior to be highly persuasive, how can he or anyone else be sure that the persuasiveness was not enhanced—at least, subconsciously—by the difference in rank?

With respect to the "straw poll" procedure that was approved by the military judge in the case at hand, the first question is whether such a procedure enhances perceptibly the risk that prohibited influence "of superiority in rank" will affect the outcome of the deliberations. Obviously, if the "straw poll" was verbal, rather than written, the danger would be enhanced, because each member's position—albeit, a tentative position—is clearly revealed to the others; and junior members might be influenced to conform to the expressed positions of their seniors.

Regardless of the form of a "straw poll," among the relevant considerations are who determines that a particular vote will not be binding and when is this determined. If this decision is made by a common consensus of the members, it does not present the same evil we condemned in *United States v. Nash, supra*—namely, that a president might compel reballoting until the members reached a result satisfactory to himself. Similarly, even if the president of the court-martial individually decides that there will be a "straw poll," and so announces before the vote is taken, the danger with which we were concerned in *Nash* will be absent, since the president will not be compelling a further vote after he knows the outcome of the initial vote and has determined that it is not satisfactory to him.

Appellant also complains that any "straw poll" undermines the reconsideration provisions of Article 52(c), and of the Manual for Courts-Martial, *see* para. 74*d*(3). In one sense, this is true, since it allows the court members to vote on guilt or innocence and then change that vote without using the reconsideration procedures authorized in the Manual. On the other hand, the Code and Manual provisions for reconsideration contemplate that in the first instance there

would have been a definitive "secret written ballot" on guilt or innocence, rather than merely a "straw poll." So long as all the court members understand in advance that a vote will be only informal and non-binding, there is not the same reason to invoke these provisions which limit the right to reconsider a formal binding vote.

### III

■ From the foregoing analysis, we conclude that a "straw poll"—an informal, non-binding vote—is not specifically prohibited by the Code and Manual and in some instances may amount to little more than a means for the court members to express their tentative views—which is permissible. However, we do not believe that this practice merits encouragement. Thus, a judge should not invite the members to engage in a "straw poll"; and, if they ask whether such a poll is permissible, he should be alert to advise them of the dangers and to assure that the ground rules for the poll will not encourage, directly or indirectly, the use "of superiority in rank" to influence opinion.

■ Although in the present case the judge failed to do this, the omission does not aid appellant's cause. For one thing, his counsel specifically indicated the absence of objection to the "straw poll" procedure; and by so doing, he waived the right to complain of the judge's failure to instruct in greater detail on this procedure. *Cf. United States v. Wray,* 9 M.J. 361 (C.M. A.1980); *United States v. Robinson,* 11 M.J. 218 (C.M.A.1981); *United States v. Johnson,* 3 U.S.C.M.A. 709, 14 C.M.R. 127 (1954); *United States v. Schumacher,* 2 U.S.C.M.A. 134, 7 C.M.R. 10 (1953); Mil.R.Evid. 105. Furthermore, there is no indication in the record of any reason to relieve appellant of the effects of this waiver because of "plain error" or the possibility of a miscarriage of justice. Not only did defense counsel fail to object to the "straw poll" instruction at trial, in his *Goode*[3] response, and in his

3. *United States v. Goode,* 1 M.J. 3 (C.M.A. 1975).

Article 38(c) brief,[4] but also even to this day there has been no defense attempt to establish by affidavit or otherwise that such a procedure was used by the court members, or that, if so, the "straw poll" was conducted in an illegal manner. Nothing in the record suggests that—contrary to the judge's explicit instructions—the court-martial president was seeking an opportunity to use superiority of rank. Moreover, the use by the court members of an informal, non-binding vote would not be intrinsically prejudicial to appellant—which probably was the reason for his counsel's lack of objection to the procedure.

## IV

Accordingly, the decision of the United States Army Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.

4. Article 38(c), UCMJ, 10 U.S.C. § 838(c).