**UNITED STATES**

v.

**Lieutenant Colonel David J. SANCHEZ, United States Air Force.**

**ACM 32602.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 5 Dec. 1996.

Decided 11 Feb. 1999.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt, Lieutenant Colonel Kim L. Sheffield, Lieutenant Colonel Ray T. Blank, Jr., and Major Gilbert J. Andia, Jr.

Appellate Counsel for the United States: Colonel Brenda J. Hollis, Lieutenant Colonel Michael J. Breslin, Major J. Robert Cantrall, and Captain Martin J. Hindel.

Before YOUNG, Senior Judge, SPISAK and SCHLEGEL, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Senior Judge:

Court members convicted the accused of fraternizing with two female airmen, NH and AD, and committing adultery with NH. Article 134, UCMJ, 10 U.S.C. § 934. The members also convicted the accused of conduct unbecoming an officer for basically the same conduct for which he was convicted of fraternization. Article 133, UCMJ, 10 U.S.C. § 933. The convening authority approved the adjudged sentence to a dismissal and 3 months confinement. The accused asserts that the military judge erred in failing to grant a discovery motion and in instructing the court members. He also raises issues concerning his sentence and the argument by the prosecutor. We modify the findings, but approve the sentence.

### I. Background

The accused arrived at McConnell Air Force Base in 1992. He worked in the same building as Senior Airman (SrA) NH, who was a defense paralegal. Between October 1995 and January 1996, when SrA NH left for a new assignment, the accused and NH carried on a romantic relationship that included dancing and drinking at the combined officers-noncommissioned officers club known as Emerald City and at local nightclubs, visiting each other's apartments, kissing, and engaging in sexual intercourse.

After SrA NH departed, the accused started a relationship with SrA AD, whom he knew from singing in the chapel choir and from attending aerobics classes. In February 1996, they both attended a medical unit sponsored "MASH" party, during which they danced closely together. SrA AD started kissing the accused on the neck and it ended up with mutual open-mouthed kissing. They also danced together at Emerald City and off-base nightclubs. At the end of February 1996, the accused and SrA AD had a two-hour personal conversation in the accused's van, outside her dormitory, in plain view of other airmen entering and leaving the dormitory.

### II. Discovery

At trial, the accused asked the military judge to compel the government to produce

all documents concerning an investigation into SrA NH's complaint against the base senior enlisted advisor. The defense request was based on the understanding (not further described) that the investigation had determined that SrA NH was not credible. The military judge denied the defense motion.

In an order dated 24 June 1998, we faulted the military judge for failing to review the materials *in camera* and attach a sealed copy to the record of trial. *See* Rule for Courts–Martial (R.C.M.) 701(g)(2). We ordered the government to provide a copy of the report for *in camera* inspection. We have examined the Inspector General's Report of Inquiry and find that it contains no evidence favorable to the defense or material to the accused's case. Contrary to the accused's expectations, the inquiry officer did not conclude that SrA NH was not credible. The inquiry officer's findings were "inconclusive," apparently because there was no other evidence to corroborate NH's statements. A sealed copy of the report of inquiry will be attached to the original record of trial to permit review by our superior courts.

### III. The Military Judge's Instructions

The accused claims the military judge erred in instructing the court members by (1) *sua sponte* prohibiting the members from considering jury nullification, (2) advising the members on how to except language from the specification in their findings, and (3) advising the members they could consider evidence of one fraternization specification to support conviction on another unrelated fraternization specification.

■■■ The military judge must instruct the court members on findings, but has substantial discretion in selecting which instructions to give. *United States v. Damatta–Olivera*, 37 M.J. 474, 478 (C.M.A.1993). On appeal, we review instructions "in their entirety rather than piecemeal." *United States v. Buchana*, 41 C.M.R. 394, 397, 1970 WL 7365 (C.M.A.1970). *Accord United States v. Maxwell*, 45 M.J. 406, 424 (1996) (citing *United States v. Snow*, 82 F.3d 935, 938–39 (10th Cir.1996)).

■■ "Failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error." R.C.M. 920(f). "Regardless of whether an issue is raised at trial, for the first time on appeal, or noticed by the court during its review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we will reverse if there is (1) error, (2) which is prejudicial to the accused's substantial rights, and (3) under all the circumstances of the case, taken as a whole, the error was not harmless." *United States v. Ruiz*, —— M.J. ——, ACM S29457, slip op. at 9 (A.F.Ct.Crim.App. Dec. 21, 1998).

#### A. Jury Nullification

During *voir dire*, the military judge advised the court members that they had a duty to acquit if the prosecution failed to prove the accused's guilt beyond a reasonable doubt, but convict if the prosecution did meet its burden. The military judge went further:

> [T]here's a concept called jury nullification, which is kicked around in the civilian world, where juries, court panels, think they have the right to disobey the law, and come back with an acquittal, even if guilt has been established. And I'll advise you that your obligation is to follow the law. If the Government meets their burden, you have a duty to return a conviction, whether you like it or not—whether you like the law or not.

During his findings instructions, the military judge told the court members that if "you are firmly convinced that the accused is guilty of the offense charged, you must find him guilty." The standard instruction says "should find him guilty." Department of the Army Pamphlet 27–9, *Military Judges' Benchbook*, 53 (30 Sep 96). The accused did not object to either instruction at trial.

The accused claims the military judge, with these instructions, invaded the province of the court members and that the military judge must not be able to single-handedly prevent such power from being exercised. We disagree.

■■■ A court-martial panel has the raw power to "render a decision that does not follow the judge's instructions," but "does not

have the *right* to nullify the lawful instructions of a military judge." *United States v. Hardy,* 46 M.J. 67, 75 (1997) (emphasis added). While we doubt the need for such an instruction in the typical case, considering the instructions as a whole, we are convinced the military judge did not err to the prejudice of the accused. He did no more than advise the members of their sworn duty.

### B. Instructions on Voting

During the Article 39(a), UCMJ, session on instructions, there was considerable discussion about the appropriate procedures the members should use if they decided to except some of the acts listed in the specifications as the means by which the accused fraternized. The military judge announced his intention to have the court members vote on the specification. If they found the accused not guilty, they would then vote on the "lesser-included offenses" created by "excepting out" selected acts, until the necessary concurrence was reached. The two defense counsel objected to this instruction and, after some debate, recommended the standard variance instruction would be more appropriate. The military judge decided to give his "lesser-included offense" instruction. The members' confusion caused the military judge to reconsider and discuss the issue further with counsel. With the consent of the accused's counsel, the military judge told the members to decide on the core issue of the accused's guilt. If they found the accused guilty of the core offense—fraternization—they could then go back and except out specific acts which the members concluded "shouldn't be there."

The accused asserts that the instructions were inconsistent and confusing, and therefore, we should set aside all the guilty findings and the sentence. Specifically, the accused alleges that the instructions necessarily did away with voting by secret written ballot, provided an opportunity for the improper influence of rank to enter the deliberations, and were so confusing that we should have little confidence that the court members followed proper voting procedures.

■ The defense agreed to, and benefited from, the variance instruction the military judge gave as the members excepted out certain acts from some of the specifications. Trial defense counsel's affirmative agreement with the final instructions amounted to waiver. *See United States v. Strachan,* 35 M.J. 362, 364 (C.M.A.1992). However, even had the accused not affirmatively waived any error in the instruction, he would still not be entitled to relief.

■ The military judge faced a common problem. Although it is clear that members may find an accused guilty by exceptions, with or without substitutions, R.C.M. 918(a)(1), there is very little guidance on the voting procedures the members should use to make such findings. The standard variance instruction just advises that findings by exceptions, with or without substitutions, is permissible. Department of the Army Pamphlet 27–9, *Military Judges' Benchbook,* ¶ 7–15 (30 Sep 1996).

In *United States v. Lawson,* 16 M.J. 38 (C.M.A.1983), the president of the court asked the military judge if the members were limited to one vote on findings or could they take other ballots to "ascertain how the feeling is going?" The military judge, without objection from counsel, told the members that he could see no objection to taking a straw poll. On appeal, the Court of Military Appeals concluded that "an informal non-binding vote—is not specifically prohibited by the Code and Manual and in some instances may amount to little more than a means for the court members to express their tentative views—which is permissible." *Id.* at 41. *See United States v. Loving,* 41 M.J. 213, 235 (1994), *aff'd on other grounds,* 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). However, the Court cautioned military judges to "assure that the ground rules for the poll will not encourage, directly or indirectly, the use of 'superiority in rank' to influence opinion." *Lawson,* 16 M.J. at 41.

In *United States v. Fitzgerald,* 44 M.J. 434 (1996), the military judge was faced with a situation similar to this case. The accused was charged with committing indecent acts upon a child, and the specification listed several discrete acts as the means by which he accomplished the offense. In answer to a

question, the military judge instructed the members to treat the different acts as lesser-included offenses. In other words, if the members found the accused not guilty of the offense as alleged, they could vote on less than all of the discrete acts alleged, depending upon the discussions and straw vote.

There were no objections to these possible voting options because the instructions inured to appellant's benefit. What the defense probably did not want was for the court members to vote separately on all the distinct elements in the specifications and then combine the findings. As a result, we hold that there was an absence of plain error and a waiver of any objection.

*Id.* at 438.

Both of the methods used by the military judge were acceptable. The key is that the members understand they may make findings with exceptions and substitutions and that the necessary number of members must agree to the specific acts of which they found the accused guilty. We are convinced that the variance instruction cleared up any confusion the court members may have had, did not encourage use of the superiority of rank to influence the opinion of any member, and did not prejudice any substantial right of the accused. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

■ As this is a recurring issue, we suggest military judges use the following instruction in such cases:

You are advised that as to (the) specification ( ) of (the) (Additional) Charge ( ), if you believe beyond a reasonable doubt that the accused committed the offense of _____, but you have a reasonable doubt that he committed each of the distinct acts alleged in the specification, you may still reach a finding of guilty as to the acts which you find beyond a reasonable doubt the accused did commit. If this becomes an issue in your deliberations, you may take a straw ballot to determine which, if any, distinct acts the accused committed. Once you have made such a determination, you should then vote by secret written ballot to determine whether or not the accused is guilty of the offense beyond a reasonable doubt.

### C. The Spillover Instruction

■ Over the objection of the defense, the military judge instructed the court members as follows:

In general, each offense must stand on its own, and you must keep the evidence of each offense separate. The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense, unless the offenses are related to each other. Although the general rule is that you may not infer the accused is guilty of one offense because his guilt may have been proven on another unrelated offense, and you must keep the evidence with respect to each offense separate, in some circumstances, you may consider evidence presented with respect to the offenses involving Senior Airman H[ ] for a limited purpose with respect to the offenses involving [SrA] D[ ]. This evidence relating to these offenses may be considered for the limited purpose of its tendency, if any, to prove a plan of the accused to engage in improper relationships with junior enlisted members. If you believe that the evidence proves such a plan, consider it with regard to all offenses. If you do not believe that the evidence proves such a plan, then the evidence can be considered only for the specific offense to which it relates.

The defense objected both to the giving of the instruction and the manner in which the military judge tailored it—he refused to advise the members that they could not conclude from this evidence that the accused was a bad person or has criminal tendencies.

"Evidence used to prove one charged offense may be used to prove another charged offense when it meets the criteria for admissibility under Military Rule of Evidence 404(b) to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Diaz,* 39 M.J. 1114, 1117 (A.F.C.M.R.1994). *See United States v. Cox,* 18 M.J. 72, 75 (C.M.A.1984). The military judge's use of

the term "plan" was unartful. Under Mil. R.Evid. 404(b), "common plan" evidence is admissible to show the identity of the perpetrator, which was not in question in this case. Nevertheless, as the evidence was admissible to show the accused's intent and his consciousness of guilt, we believe that any error in the military judge's instruction was harmless. Article 59(a), UCMJ. It clearly informed the members that they must keep the acts separate and that they could not convict on one offense merely because they found the accused guilty of another offense.

## IV. Sentencing Issues

The accused raises three issues concerning his sentencing: (1) the sentence is too severe; (2) the application of Articles 57(a) and 58b, UCMJ, 10 U.S.C. §§ 857(a), 858b, to the accused violated the *Ex Post Facto* Clause of the Constitution; and (3) the trial counsel's argument impermissibly blurred the distinction between a dismissal and an administrative discharge.

### A. Sentence Severity

This Court may affirm only such part or amount of the sentence as we find correct in law and fact and determine, on the basis of the entire record, should be approved. Article 66(c), 10 U.S.C. § 866(c). The purpose of Article 66(c), UCMJ, is to ensure "that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A.1988). We do that by giving individualized consideration to the nature and seriousness of the offenses and the character of the offender. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). Sentencing is an inexact art, and by affirming a sentence we do not necessarily mean that it is the only appropriate sentence or that it is the sentence we would have adjudged had we been the sentencing authority. *United States v. Joyner*, 39 M.J. 965, 966 (A.F.C.M.R.1994).

At the time of trial, the accused was 40 years old, had been on active duty just short of 19 years, and was married with two dependents. He had served as an F–4 weapons systems officer and in the comptroller career field. He was the base comptroller at the time of the offenses and had been the commander of the Comptroller Squadron.

His performance reports indicate he was an outstanding officer and dedicated member of the Air Force. However, the accused ignored several signals that he should end his illegal conduct. SrA NH expressed her concern about them being seen in public together and the senior enlisted advisor had warned the accused about "wearing out his welcome" in the enlisted side of the combined club. After careful consideration, we are convinced that the accused's sentence is appropriate.

### B. Ex Post Facto

For any sentence of a general court-martial which includes death, confinement in excess of six months, or a punitive discharge and any confinement, an accused shall automatically forfeit all his pay and allowances during his confinement. Article 58b, UCMJ, 10 U.S.C. § 858b. This rule applies to all cases in which at least one of the offenses of which an accused was convicted was committed on or after 1 April 1996. *United States v. Gorski*, 47 M.J. 370 (1997). In the case of a continuing offense, such as fraternization, we look for proof of at least some conduct after 1 April 1996 which supports the conviction.

Specification 2 of Charge I is the only specification alleging criminal conduct after 1 April 1996. It alleges that the accused fraternized with SrA AD between on or about 1 February 1996 and 30 April 1996. The only evidence supporting a finding that the accused committed misconduct after 1 April 1996 is the testimony of two witnesses who agreed that they observed the accused and SrA AD sitting in his vehicle outside her dormitory in March, April, or May. Under these circumstances, we are unable to conclude with any certainty that the offense continued after 1 April 1996. Therefore, the collection of automatic forfeitures was improper.

### C. Trial Counsel's Argument

During his sentencing argument, the trial counsel, without objection, stated that the accused's behavior made him unsuitable for further military service and that his commission should be taken away. Citing *Unit-*

ed States v. Motsinger, 34 M.J. 255 (C.M.A. 1992), the accused now complains that this argument blurred the distinction between a punitive and an administrative discharge. We disagree.

In *Motsinger*, the trial counsel told the court members that if they did not give the accused a punitive discharge she would be working for someone in the Air Force. This argument was error because it incorrectly suggested that the accused could not be administratively separated for her misconduct. In this case, taking the trial counsel's argument as a whole, it is obvious that he was asking for a dismissal, not because the accused would otherwise be retained, but because the serious nature of the offenses warranted a dismissal. We find no error in the trial counsel's argument.

### IV. Multiplicity

The accused was convicted of fraternization and conduct unbecoming an officer with SrA NH for basically the same conduct. The accused was convicted of fraternization and conduct unbecoming an officer with SrA AD, but the fraternization specification contains more allegations of specific misconduct than does the conduct unbecoming an officer specification. The military judge found the fraternization offenses to be multiplicious for sentencing with the corresponding conduct unbecoming an officer offenses, limited the maximum sentence accordingly, and so instructed the court members. The accused did not contest the multiplicity of the offenses at trial or on appeal.

 It is clear as a matter of law that an accused cannot be convicted of fraternization under Article 134 and conduct unbecoming an officer under Article 133 for the same underlying conduct. *United States v. Harwood*, 46 M.J. 26, 28 (1997). Where the misconduct alleged in the specifications is identical, the Article 134 fraternization offense is dismissed. *See Id.* Since the fraternization offense with SrA AD alleges more specific acts of misconduct than does the conduct unbecoming an officer offense, we will set aside that conduct unbecoming an officer offense. After evaluating the possible impact of this error, we are convinced that the accused was not prejudiced in his sentence.

### V. Conclusion

The findings of guilty of specification 1 of Charge I (fraternization with SrA NH) and specification 2 of Charge II (conduct unbecoming an officer with SrA AD) are set aside and dismissed. All forfeitures already collected from the accused will be restored. The record of trial is returned to The Judge Advocate General for action consistent with this opinion. The case need not be returned to this Court following administrative correction unless further appellate review is required. The findings, as modified, and sentence are correct in law and fact, and accordingly are

AFFIRMED.

Judge SPISAK and Judge SCHLEGEL concur.