**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman TRENTLEE D. MCCLOUR**
**United States Air Force**

**ACM 38704**

**11 February 2016**

Sentence adjudged 3 July 2014 by GCM convened at Joint Base Pearl Harbor-Hickam, Hawaii. Military Judge: Ira Perkins.

Approved Sentence: Bad-conduct discharge, confinement for 180 days, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for Appellant: Captain Annie W. Morgan.

Appellate Counsel for the United States: Major Mary Ellen Payne and Gerald R. Bruce, Esquire.

Before

TELLER, SANTORO, and ZIMMERMAN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

Officer and enlisted members sitting as a general court-martial convicted Appellant, contrary to his plea, of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1] The adjudged and approved sentence was a bad-conduct discharge, confinement for 180 days, total forfeitures, and reduction to E-1. Appellant asserts: (1) the evidence is legally and factually insufficient to sustain his conviction, (2) the military judge erred by denying a challenge for cause, (3) the military judge erred by

---

[1] Appellant was acquitted of raping the same victim on the same occasion.

not providing appropriate relief after a witness offered what Appellant contends was "human lie detector" testimony, and (4) the military judge erred by instructing the members that they must enter a finding of guilty if the government proved its case beyond a reasonable doubt. We disagree and affirm.

*Background*

The victim's brother, stationed with Appellant at Kunsan AB, Korea, introduced him "virtually" to the victim, Airman First Class (A1C) BS, while she was assigned to Joint Base Pearl Harbor-Hickam, Hawaii. Appellant and the victim spoke online and on the telephone over the following several months in anticipation of Appellant's upcoming reassignment to Hickam.

Appellant arrived at Hickam in March 2013. The friendship continued, culminating several weeks later in one occasion of consensual sexual intercourse. Knowing Appellant had a girlfriend, the victim told him that she did not want to engage in further intimate relations but wanted to remain friends and even entertained the idea of residing with Appellant and his roommate.

On 6 May 2013 around 2200 or 2230 hours, the victim and another friend, Senior Airman (SrA) AJ, drove to Appellant's residence. Appellant, his roommate, SrA AJ, and the victim ate pizza; the victim studied for an upcoming military examination; and one or more of the others settled on the couch to watch television and play video games. At some point later in the evening, the victim also relocated to the couch. The three other Airmen consumed varying amounts of alcohol, but the victim did not drink.

The victim testified that she lay on the couch and pulled a blanket over her. Appellant approached her and told her she should sleep in his room. She declined, telling him she did not want to go to his room because the last time she was there they ended up having intercourse. He suggested once or twice more that she sleep in his bed; she declined each time.

She fell asleep but was awakened to Appellant and his roommate's carrying her into Appellant's bedroom. She squirmed, trying to get them to put her down, while simultaneously laughing and joking with them. They laid her on Appellant's bed and his roommate left the room. Appellant remained.

A1C BS got up to leave the room, but Appellant grabbed her by the waist and pulled her back, shut the door, and turned off the light. She asked him what he was doing, and he told her he was going to have sex with her, then grabbed her waist, bent her over, and pulled her pants and underwear down.

She froze and started to cry. He penetrated her several times in multiple positions and wrapped his arm around her throat. To create lubrication, Appellant spit on his hand several times and touched his penis.

The victim told Appellant that he was hurting her and she needed to go to the bathroom. He did not stop but responded, "[B]ut baby, don't you like it? I can hear you moan." At this point, she pushed him away, got up off the bed, went into the bathroom, and shut the door behind her. Appellant opened the door and said he wanted to check on her.

A1C BS walked out of the bathroom, picked up her pants and underwear, and began to get dressed. Appellant pushed her against the bed and said, "[W]hat are you doing? I'm not done yet." Looking at her clothing, he said, "[T]his is our underwear," then placed the victim's hands on his penis, saying, "[T]his is ours too." She replied, "[N]o, that's you and your girlfriend's."

The victim told Appellant she was going to get a drink of water and left the bedroom. He fell asleep on the bed. She went to the living room, spoke to SrA AJ, went outside and called her supervisor—but did not talk about what had just occurred—and then she and SrA AJ left Appellant's house. On the drive home, the victim told SrA AJ that Appellant had non-consensual sex with her.

Additional facts necessary to resolve the assignments of error are included below.

*Legal and Factual Sufficiency*

Appellant's attack on the sufficiency of his conviction is four-fold. He argues that (1) SrA BS was not credible; (2) the Government failed to establish that sexual contact occurred; (3) the Government failed to prove lack of consent and disprove a reasonable mistake of fact defense; and (4) even if the alleged contact occurred, the Government failed to prove that it was done with the intent to gratify sexual desires.

This court reviews issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *see also United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of [Appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. The term reasonable doubt, however, does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The elements of abusive sexual contact in this case are:

(1) At or near Honolulu, Hawaii, on or about 7 May 2013, Appellant committed sexual contact upon A1C BS, to wit: causing A1C BS to directly touch his penis;

(2) That Appellant did so by causing bodily harm to A1C BS, to wit: grabbing her hands and placing them on his penis;

(3) That Appellant did so with the intent to gratify his sexual desires; and

(4) That Appellant did so without the consent of A1C BS.

While the members may have perceived a conflict in the evidence with respect to whether A1C BS consented to the initial interaction in the bedroom, or if she did not, whether Appellant reasonably believed that she did, we discern no meaningful conflict in the evidence with regard to the specification of which Appellant was convicted. At the time Appellant caused A1C BS to touch his penis, the sexual intercourse had concluded and A1C BS had retreated to the bathroom. Her reaction to his subsequent contact with her—both according to her testimony and the additional evidence introduced on this point—is consistent with one who had been assaulted.

We are similarly unpersuaded by Appellant's remaining arguments. A1C BS testified that the contact occurred. Other evidence in the record supports her testimony on this point. There is ample evidence to support the members' conclusion that Appellant did not reasonably believe A1C BS consented to this contact. Finally, we find no merit in Appellant's argument that his intent was not to gratify his sexual desires because his penis was flaccid at the time and he made the self-serving statement that he was "joking around."

We have considered the evidence in the light most favorable to the prosecution. We have also made allowances for not having personally observed the witnesses. Having paid particular attention to the matters raised by Appellant, we find the evidence legally sufficient to support his conviction for abusive sexual contact. Moreover we are, ourselves, convinced of his guilt beyond a reasonable doubt.

*Denial of Challenge for Cause*

Trial defense counsel challenged Senior Master Sergeant (SMSgt) SG for cause, arguing that he was impliedly biased because his wife had been sexually assaulted by her brother 15 years earlier and because he stated, in response to a question, that his takeaway from Sexual Assault Prevention and Response (SAPR) training was, "[W]e always listen to the victim. But, I mean, due process is due process."

The military judge denied the challenge for cause, finding that the assault of SMSgt SG's wife was remote in time and under facts and circumstances different than those in Appellant's case. The military judge also noted that SMSgt SG was not a facilitator of SAPR training (unlike another member whom the military judge did excuse for cause), and indicated his agreement with the trial counsel's statement that the context of SMSgt SG's comment about "always listen[ing] to the victim" meant that he was trained to listen to alleged victims, not automatically believe them.

Appellant elected not to exercise his peremptory challenge against any member of the panel.

Appellant has waived appellate review of this issue. Rule for Courts-Martial (R.C.M.) 912(f)(4) controls this very situation: "When a challenge for cause has been denied . . . failure by a challenging party to exercise a peremptory challenge against any member shall constitute waiver of further consideration of the challenge upon later review." *See also United States v. Medina*, 68 M.J. 587, 592 (N.M. Ct. Crim. App. 2009) (citing R.C.M. 912(f)(4)).

Even without waiver, we find the military judge did not err in denying the challenge for cause. Reviewing for actual bias, implied bias, and applying the liberal grant mandate, there is nothing about SMSgt SG's answers in voir dire to indicate that Appellant received anything less than a panel composed of fair and impartial members. *See United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001).

*"Human Lie Detector" Testimony*

The victim's direct and cross-examinations addressed aspects of her in-court testimony that differed in certain respects from her out-of-court statements to friends and investigators. During its case in chief, the defense offered expert testimony to establish

that A1C BS had been diagnosed with post-traumatic stress disorder. The Government rebutted portions of this testimony by calling its own expert forensic psychologist, Colonel PC. After establishing his qualifications as an expert, the following dialog ensued:

Q. Now, Colonel [PC], in your opinion, can Post-Traumatic Stress Disorder, maybe we'll just use PTSD from now on, can that help explain the memory loss that Airman [BS] has described as part of this trial?

A. I want to be clear, I have not evaluated her, neither has [the defense expert]. Clinical evaluation[] is the only way to get into the specific weeds on her memory. But Post-Traumatic Stress Disorder, to me, given all the clinical data I have reviewed in her medical records, i[t] absolutely accounts for her memory loss.

Q. So, can you explain how it might account for memory loss?

A. So, if we go to that criteria, where the inability to recall key aspects of a trauma, is part of PTSD. And again, I emphasize, this is validated through the theory, robust research, and clinical application. But in this case, there's an aspect in her testimony where she tried to push out some thoughts. And the reality is, I don't know how well she pushed them out or not. I've not done the clinical assessment, but what I do know is this. This is not the first time I've heard about patients trying to get thoughts out, particularly thoughts related to trauma that are painful, either psychological or maybe even physically. But there is an absolute attempt to push these thoughts out of their consciousness so that they're not painful. I've seen this again, and again, and again, throughout the years. I do believe in her testimony, and again, I have not assessed her. But I would absolutely want clarity on what she meant by the way she described it, that she pushed out the memory of being choked and that's why she didn't recall it during her—

Trial defense counsel objected, citing the prohibition against offering human lie detector testimony, and the military judge immediately convened an Article 39(a), UCMJ, 10 U.S.C. § 839(a) session.

Outside the members' presence, the military judge asked Colonel PC what he meant by the statement, "I do believe her testimony." Colonel PC responded that he "grossly misspoke," and that he intended to say that there were two parts to what he was about to say next: "Number one, so, the inability to recall key aspects of a traumatic event, it's within the diagnostic criteria of PTSD; second, to get clarity. The only way to get clarity on that challenge is to do a clinical assessment. And that's it, sir."

Defense counsel then sought three specific forms of relief: that the military judge "strike" Colonel PC's testimony in its entirety, that his curriculum vitae (CV) be withdrawn from evidence, and that he not be allowed to testify further. The military judge granted the defense request to "strike" the testimony at issue but declined to prohibit the members from considering Colonel PC's CV. Although the military judge did not grant the request to prohibit Colonel PC from testifying further, he did restrict Colonel PC's subsequent testimony to two issues: whether he believed there was PTSD involved in the case and, if so, what impact that would have had on the victim's memory. Trial defense counsel then made a motion for a mistrial, which was denied.

When the members returned, the military judge gave the following instruction:

> Members, during the direct examination, the expert had made a statement, I do believe in her testimony. I'm asking that that question and that response be stricken because an expert witness cannot testify to the alleged victim's account of what occurred, whether it's true or not true. They can't—the expert can't believe or not believe the alleged victim's account of something. They're not allowed to go into that. . . . You're not to consider that, at all, in terms of whether this witness does or does not believe the victim.

Prior to deliberations, the military judge gave the following instruction:

> Only you, the members of the court, determine the credibility of the witnesses and what the facts of this case are. No expert witness can testify that the alleged victim's account of what occurred is true or credible, or not credible, or what the expert believes or does not believe the alleged victim or that a sexual encounter did or did not occur. To the extent that you believed that an expert testified or implied that he does or does not believe the alleged victim or that a crime did or did

not occur, or that the alleged victim is or is not credible, you may not consider this evidence that the alleged victim is or is either not credible. And as I instructed you earlier, you had to strike that testimony, where the expert inadvertently made a comment that sounded like that. Experts are not allowed to testify [to] that. That wasn't his intention. You must strike that testimony.

Before us, Appellant asserts the military judge erred in three ways: (1) he abused his discretion by failing to stop the testimony, (2) he abused his discretion and exacerbated the error by overruling the defense's objection to "an additional elicitation of the testimony," and (3) he failed to give a proper instruction to ensure that the members disregarded the testimony. Appellant does not, however, argue that the military judge erred by denying his motion for a mistrial.

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Johnson*, 46 M.J. 8, 10 (C.A.A.F. 1997). The issue of whether the members were properly instructed is a question of law, which we review de novo. *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002). Although we assume without deciding that Colonel PC's testimony that he believed in the victim's testimony constituted inadmissible human lie detector testimony, s*ee United States v. Kasper*, 58 M.J. 314 (C.A.A.F. 2003),[2] we are not persuaded that the military judge's handling of the situation constituted error. To the contrary, the military judge stopped the testimony and issued an immediate curative instruction which he followed with another instruction at the close of the evidence. This is precisely the judicial response suggested by our superior court. *Id.* at 319.

The military judge stopped Colonel PC's testimony and convened an immediate Article 39(a), UCMJ, session as soon as the objection was lodged and while the witness was still answering the question that elicited the problematic response. When Colonel PC returned to the stand, and after the military judge instructed the members to disregard Colonel PC's earlier inadmissible testimony, the military judge sustained each of defense counsel's subsequent objections except one.[3] Finally, Appellant does not identify any error in the military judge's subsequent instructions that the members must disregard the inadmissible opinion testimony. Court members are "presumed to follow instructions,

---

[2] Appellant also asserts that Colonel PC's testimony that post-traumatic stress disorder (PTSD) "absolutely" accounted for the victim's reported memory loss similarly constitutes impermissible human lie detector testimony. As he did not object to this testimony at trial, we test for plain error. Rule for Courts-Martial 920(f). We are not persuaded that testimony that PTSD caused a witness's reported memory loss is human lie detector testimony. *See United States v. Kasper*, 58 M.J. 314, 315 (C.A.A.F. 2003) (stating that human lie detector testimony is "an opinion as to whether the person was truthful in making a specific statement regarding a fact at issue in the case"). Because we cannot conclude that the admission of this testimony constituted plain error, we do not test for prejudice.

[3] The question to which the defense objection was overruled was, "[I]s traumatic amnesia actually a diagnosis in the DSM-V?"

until demonstrated otherwise." *Washington*, 57 M.J. at 403 (citing *United States v. Holt*, 33 M.J. 400, 408 (C.M.A. 1991)).

*Findings Instructions*

Prior to deliberations, the military judge instructed the members as follows with respect to proof beyond a reasonable doubt:

> A "reasonable doubt" is a conscientious doubt based upon reason and common sense, and arising from the state of evidence. Some of you may have served as jurors in civil cases, or as members of an administrative board[], where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the accused's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of any offense charged, you must find him guilty. If, on the other hand, you think there is a real possibility that the accused is not guilty, you must give him the benefit of the doubt and find him not guilty.

Appellant did not object to this instruction. Appellant now argues that this instruction violates Supreme Court precedent prohibiting a trial judge from "directing the jury to come forward with a [guilty verdict], regardless of how overwhelmingly the evidence may point in that direction." *United States v. Martin Linen Supply Company*, 430 U.S. 564, 572–73 (1977).

We review de novo the military judge's instructions to ensure that they correctly address the issues raised by the evidence. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010); *United States v. Thomas*, 11 M.J. 315, 317 (C.M.A. 1981). Where, as here, trial defense counsel made no challenge to the instruction now contested on appeal, the appellant forfeits the objection in the absence of plain error.[4] R.C.M. 920(f). If we find error, we must determine whether the error was harmless beyond a reasonable doubt. *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011).

---

[4] Although we recognize that the rule speaks of "waiver," this is, in fact, forfeiture. *United States v. Sousa*, 72 M.J. 643, 651–52 (A.F. Ct. Crim. App. 2013).

The language used by the military judge in Appellant's case is—and has been for many years—an accepted reasonable doubt instruction used in Air Force courts-martial. *See, e.g., United States v. Sanchez*, 50 M.J. 506, 510–11 (A.F. Ct. Crim. App. 1999). It was also offered by our superior court as a suggested instruction. *See United States v. Meeks*, 41 M.J. 150, 157 n.2 (C.M.A. 1994) (citing Federal Judicial Center, Pattern Criminal Jury Instruction 17-18 (1987)). Both *Sanchez* and *Meeks* were decided after the authorities cited in Appellant's brief.

Based on this legal landscape, we cannot say that the military judge committed error, plain or otherwise, in his reasonable doubt instruction.

*Conclusion*

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court