# UNITED STATES AIR FORCE
## COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39351**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Vincell D. SHADRICKS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 6 February 2019

———————————

*Military Judge:* Brian D. Teter.

*Approved sentence:* Bad-conduct discharge, confinement for 3 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. Sentence adjudged 14 June 2017 by GCM convened at Whiteman Air Force Base, Missouri.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major J. Ronald Steelman, III, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges*.

Senior Judge JOHNSON delivered the opinion of the court, in which Judge DENNIS and Judge LEWIS joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

JOHNSON, Senior Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of two specifications of sexual abuse of a minor in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10

U.S.C. § 920b. The court members sentenced Appellant to a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence.

Appellant raises two issues on appeal: (1) whether the military judge erroneously instructed the court members with respect to the Government's burden of proof; and (2) whether Appellant was denied effective assistance of counsel.[1] We find no error and we affirm the findings and sentence.

## I. BACKGROUND

In the summer of 2016 Appellant was stationed at Whiteman Air Force Base (AFB), Missouri, as a security forces Airman. An avid fitness enthusiast, Appellant frequently traveled to a nearby town after duty hours to train and attend classes at a martial arts dojo.

In late July 2016, VR—then a 14-year-old girl—began attending classes at the same dojo, where she met Appellant. Appellant accepted a Facebook "friend" request from VR. In late August 2016, VR suffered a minor injury during a martial arts class and missed a week of classes. During this absence, on 31 August 2016 Appellant began a correspondence with VR by Facebook Messenger, which lasted until 3 September 2016. The conversation began innocuously but soon veered to sexual matters. In the course of the correspondence Appellant sent VR a video of himself engaging in sexual intercourse with a woman, in which Appellant's penis is visible; a video of the woman engaging in oral sexual intercourse with Appellant, in which Appellant's penis is visible; and an audio recording of "sexual sounds," apparently of people engaged in sexual intercourse. In addition, Appellant sent VR messages commenting on the size of his penis, describing his past sexual activities, inquiring about VR's prior sexual experiences, and describing sexual activities Appellant would like to engage in with VR. Eventually, VR told Appellant she wanted to stop these communications because she did not want to "hurt" her boyfriend, and the correspondence ended. VR told her boyfriend about these messages, which were subsequently reported to the Air Force Office of Special Investigations.

Appellant was charged with one specification of sexual abuse of a child by exposing his genitalia to VR via Facebook Messenger and one specification of sexual abuse of a child by communicating indecent language to VR via Facebook Messenger, both with the intent to gratify his sexual desire. Appellant, who testified at trial, did not deny sending the messages and recordings; his

---

[1] Appellant personally raises the second issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

defense was based on his claim that he did not know VR was under 16 years old. The Government sought to establish Appellant knew or reasonably should have known VR was under 16 years old by various means including, *inter alia*, VR's testimony that she told Appellant she was only 14; evidence that VR's true age was visible on her Facebook profile; evidence that VR's parents drove her to the dojo and that VR did not drive; inconsistencies in Appellant's testimony; Appellant's admission that while he was under investigation he lied to another member of his squadron to the effect that VR told him she was 18 years old; and a message Appellant sent to VR commenting that she looked "very mature. You look 16 act 17 honestly." The court members convicted Appellant of both specifications as charged.

## II. DISCUSSION

### A. Findings Instruction

#### 1. Additional Background

Before trial, the Defense moved the court to "not instruct the members that if the government's evidence leaves them firmly convinced of the Accused's guilt then they must convict," and to "prohibit the prosecution from making any suggestion to the members . . . that if the evidence leaves them firmly convinced of the Accused's guilt then they must convict." The Government opposed the motion, and the military judge denied it.

The military judge's instructions to the court members on findings included the following:

> "Proof beyond a reasonable doubt" is proof that leaves you firmly convinced of the accused's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the [law] does not require proof that overcomes every possible doubt. If based upon your consideration of the evidence you are firmly convinced that the accused is guilty of the offense charged, you *must* find him guilty. If on the other hand you think that there is a real possibility that the accused is not guilty, you must give him the benefit of the doubt and find him not guilty.

(Emphasis added). The senior trial counsel specifically referred to this instruction during his argument on findings.

#### 2. Law

Whether a military judge properly instructed the court members is a question of law we review de novo. *United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017) (citation omitted). Instructions must be evaluated "in the context of the overall message conveyed to the jury." *United States v. Prather*, 69

M.J. 338, 344 (C.A.A.F. 2011) (quoting *Humanik v. Beyer*, 871 F.2d 432, 441 (3d Cir. 1989)). Where "constitutional dimensions [are] at play," instructional errors are tested for harmlessness beyond a reasonable doubt. *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006) (citing *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005)).

### 3. Analysis

Appellant contends the military judge abused his discretion by instructing the court members that they "must" find Appellant guilty if the evidence left them "firmly convinced" of his guilt. Appellant acknowledges that the challenged instruction has long been a standard element in the definition of reasonable doubt military judges have given members in Air Force courts-martial. Appellant also acknowledges that the United States Court of Appeals for the Armed Forces (CAAF) specifically held in *McClour* that such an instruction was not plain error requiring reversal in a case where the defense did not object to the instruction at trial. 76 M.J. at 26. Appellant admits he is raising the same issue the CAAF addressed in *McClour*, but notes the standard of review is different because in his case the instruction was challenged at trial. He contends his convictions and sentence must be set aside. We are not persuaded.

Our opinion in *McClour* noted the challenged language "is—and has been for many years—an accepted reasonable doubt instruction used in Air Force courts-martial" and found no error, "plain or otherwise." *United States v. McClour*, No. ACM 38704, 2016 CCA LEXIS 82, at *17–18 (A.F. Ct. Crim. App. 11 Feb. 2016) (unpub. op.) (citing *United States v. Sanchez*, 50 M.J. 506, 511 (A.F. Ct. Crim. App. 1999)), *aff'd*, 76 M.J. 23 (C.A.A.F. 2017); *see also United States v. Jones*, 46 M.J. 815, 817–18 (N.M. Ct. Crim. App. 1997). Nothing about the CAAF's opinion in *McClour* suggests that court would have reached a different result had it applied a de novo standard of review. On the contrary, the CAAF noted "numerous federal appellate and state supreme courts" have upheld the language of the challenged instruction. *McClour*, 76 M.J. at 25 (citations omitted). In addition, the CAAF noted it had previously cited with approval very similar language in the Federal Judiciary Center's Pattern Criminal Jury Instructions. *Id.* at 26 (citing *United States v. Meeks*, 41 M.J. 150, 157 n.2 (C.M.A. 1994)).

Appellant's citations to *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73 (1977), and *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993), suggest he views the challenged instruction as directing a verdict of conviction, an argument the CAAF explicitly rejected in *McClour*. *See* 76 M.J. at 26. Similarly, Appellant's references to *United States v. Hayward*, 420 F.2d 142, 145 (D.C. Cir. 1969), and *United States v. Bejar-Matrecios*, 618 F.2d 81, 85 (9th Cir. 1980), are unavailing. *Hayward* dealt with an entirely different instructional error. 420 F.2d at 143–44. The dictum Appellant cites from *Bejar-Matrecios*

expresses concern regarding an instruction similar to that in the instant case, but includes the caveat that the instruction "probably did not divest the jury of its power to return a verdict of acquittal and would not have been reversible error." 618 F.2d at 85 (citation omitted).

Accordingly, we find no cause to deviate from our prior reasoning, and we conclude the military judge did not abuse his discretion by providing the challenged instruction.

## B. Ineffective Assistance of Counsel

### 1. Law

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Accordingly, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001)). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *Mazza*, 67 M.J. at 474).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Gooch*, 69 M.J. at 362 (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

### 2. Analysis

Appellant has submitted a declaration and assignment of error personally asserting his trial defense counsel were ineffective in four respects: (1) failing to call certain witnesses; (2) failing to recommend a specific sentence to the court members; (3) failing to confront VR's mother when she testified during

sentencing proceedings; and (4) recommending Appellant elect trial by court members rather than by the military judge alone. At the Government's request, this court ordered affidavits from both of Appellant's trial defense counsel, Major (Maj) JM and Captain (Capt) CC. Accordingly, both counsel submitted declarations that are generally consistent with one another. Their declarations, in general, do not contradict Appellant's declaration but explain the defense team's decisions at trial. We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes and are convinced such a hearing is unnecessary. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We address Appellant's assertions in turn.

### a. Failure to Call Witnesses

First, Appellant contends trial defense counsel failed to call two potential witnesses, JR and AK, who also attended the dojo where Appellant and VR met. JR was a friend of Appellant; AK was a female student approximately the same age as VR. Appellant contends these two witnesses could have testified that VR lied about telling Appellant how old she was and that VR acted older than her age.

Maj JM and Capt CC acknowledged they interviewed JR and AK before trial and were aware both could testify they never heard VR tell Appellant her age. Initially, the defense team considered calling both as witnesses to undermine VR's pretrial statement to law enforcement that she had told Appellant her age multiple times. However, at trial VR testified she told Appellant her age only once at the dojo and admitted her prior statement was not true. Moreover, VR did not testify that JR or AK were present when she told Appellant her age. The Defense elicited testimony from two other witnesses who VR testified *were* present that they did not recall VR telling Appellant her age. In light of VR's admissions in her own testimony coupled with this testimony of other witnesses, Maj JM and Capt CC determined the potential testimony of JR and AK became unnecessary. In addition, trial defense counsel believed there were risks in calling these witnesses. The Prosecution might elicit from JR indicators that might have been apparent to Appellant that VR was in fact underage. As for AK, Maj JM explained:

> AK dressed and acted older than VR in our perception, and [A]ppellant knew that AK was under the age of 16. Putting AK on the stand posed a serious risk that the members would see her and use that as one more "red flag" that [A]ppellant should have seen in determining that VR was underage.

Maj JM and Capt CC did not specifically respond to Appellant's contention that JR and AK could have provided evidence that VR acted older than her

age. However, given Appellant's lack of specificity as to what the witnesses would have testified to in this regard, we do not find his contention persuasive. We conclude there was a reasonable explanation for trial defense counsel's decision not to call JR or AK, and their performance did not fall measurably below that expected of defense counsel in this respect.

### b. Failure to Recommend a Specific Sentence

Appellant contends trial defense counsel were ineffective by failing to make a specific sentence recommendation to the court members regarding confinement. In response, Maj JM and Capt CC explained that, in consultation with their forensic psychologist expert consultant, they discussed whether to make a specific confinement recommendation. They elected not to do so in part because they were uncertain how the court members felt about Appellant. Trial defense counsel believed it was possible the court members believed Appellant honestly but unreasonably thought VR was at least 16 years old, in which case the members might be inclined to impose a light sentence. Trial defense counsel reasoned that arguing for a specific term of confinement might establish a minimum sentence in the minds of the court members that might not otherwise exist. We find this to be a reasonable consideration. Moreover, we perceive no "reasonable probability" that a defense recommendation for a specific term of confinement would have resulted in a sentence more favorable to Appellant.

### c. Failure to Confront Victim's Mother During Sentencing

Appellant's declaration faults trial defense counsel for failing to "confront" VR's mother when she testified during sentencing proceedings.[2] Appellant argues VR's mother could have been cross-examined regarding an unspecified prior false statement the mother made during the investigation. In response, Maj JM and Capt CC explain they did not want to appear confrontational with VR's family on the heels of the members' guilty verdict. The mother's testimony was brief and not particularly inflammatory. Trial defense counsel could reasonably conclude that nitpicking possible inconsistencies might appear to be "bullying" the victim's family and prove counterproductive. Moreover, Appellant fails to specify any particular testimony from VR's mother that was false or misleading and that unfairly prejudiced him in sentencing. We find no basis

---

[2] Appellant's assignment of error asserts "[t]rial defense counsel [ ] *failed to confront VR when she testified* at during [sic] the sentencing phase of my court-martial, despite her inconsistent testimony and lies that were exposed during the findings portion of my court-martial." (Emphasis added). However, although VR's mother testified as a Government witness and VR's father gave an unsworn statement as VR's designee pursuant to Rule for Courts-Martial 1001A(e), during sentencing proceedings VR herself neither testified nor provided an unsworn statement.

to conclude cross-examination of VR's mother would have yielded a more favorable result for Appellant.

### d. Forum Selection

Finally, Appellant contends that he wanted to elect trial by the military judge alone, but his counsel recommended trial by court members. Appellant further explains that the military judge seemed to "turn towards" the Defense over the course of the trial, and after trial the military judge told counsel for both parties he thought the sentence was "too harsh." Indubitably, it is an accused's prerogative to select the forum. *See* Rule for Courts-Martial 903(b). However, trial defense counsel did not overstep their bounds by making an informed recommendation to their client. After discussing forum selection with the defense expert consultant in forensic psychology, Maj JM and Capt CC recommended Appellant select officer and enlisted members as the best chance to obtain an acquittal. Appellant agreed at the time, and even now acknowledges he was "persuaded" rather than coerced. Maj JM produced a document dated 12 June 2017, the first day of trial, and signed by Appellant that stated, *inter alia*, Appellant understood his options with regard to forum selection, understood the decision was his alone to make, and "knowingly and voluntarily" elected to be tried by officer and enlisted members. The fact that Appellant, in hindsight, may have come to second-guess that decision does not render trial defense counsel's advice unreasonable or their performance deficient.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court