# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM 40321 (f rev)

_____

### UNITED STATES
*Appellee*

**v.**

### Monica R. ARROYO
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 18 June 2024[1]

_____

*Military Judge*: Christopher D. James (arraignment and pretrial motions); Thomas A. Smith (trial and remand).

*Sentence*: Sentence adjudged 9 March 2022 by GCM convened at Tinker Air Force Base, Oklahoma. Sentence entered by military judge on 26 April 2022 and re-entered on 30 November 2023: Bad-conduct discharge, confinement for 37 days, and reduction to E-2.

*For Appellant*: Major Heather M. Bruha, USAF (argued); Megan P. Marinos, Esquire.

*For Appellee*: Captain Kate E. Lee, USAF (argued); Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Major Jay S. Peer, USAF; Major Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

*Amicus Curiae for Appellant*: James K. Van Drie (law student, argued); T. P. Tideswell, Captain USN (Ret.), Esquire (supervising attorney); Cathryn M. Jones (law student)—The George Washington University Law School, Washington, District of Columbia.

_____

[1] The court heard oral argument in this case on 10 April 2024 at The George Washington University Law School, Washington, District of Columbia, as part of this court's Project Outreach Program.

*Amicus Curiae for Appellee*: Kyung Mo Kim (law student, argued); Henry R. Molinengo II, Rear Admiral USN (Ret.), Esquire (supervising attorney); Christiana Lano (law student)—The George Washington University Law School, Washington, District of Columbia.[2]

*Amicus Curiae for Victim*: Captain Aaron D. Sanders, USAF (argued); Devon A. R. Wells, Esquire.

Before RICHARDSON, ANNEXSTAD, and RAMÍREZ, *Appellate Military Judges*.

Senior Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge RICHARDSON joined. Judge RAMÍREZ filed a separate opinion concurring in part and dissenting in part.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

ANNEXSTAD, Senior Judge:

A general court-martial composed of a military judge alone convicted Appellant, consistent with her plea, of one specification of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[3] Pursuant to a plea agreement, two specifications of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920, were withdrawn and dismissed with prejudice.[4] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 37 days, and reduction to the grade of E-2. The convening authority took no action on the findings or sentence.

Upon initial review, Appellant raised three issues, which we reworded: (1) whether the military judge committed plain error by allowing the victim's unsworn statement to address matters outside the scope of permissible victim

---

[2] The *amicus curiae* supervising attorneys for Appellant and Appellee were both properly admitted to practice before this court.

[3] All references in this opinion to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[4] The dismissed specifications involve the same alleged victim as the offense of which Appellant was convicted; however, the factual basis for the convicted offense is distinct from the bases for the dismissed specifications, which allegedly occurred later in the same evening.

impact; (2) whether circuit trial counsel committed prosecutorial misconduct in his sentencing argument; and (3) whether Appellant is entitled to relief because she was not timely served a copy of the victim's submission of matters nor was she provided an opportunity to rebut those matters prior to the convening authority making a decision in her case.

On 25 August 2023, this court remanded the record to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the post-trial processing, specifically to allow Appellant the opportunity to rebut victim matters prior to the convening authority taking action on her case. *United States v. Arroyo*, No. ACM 40321, 2023 CCA LEXIS 358, at *7–8 (A.F. Ct. Crim. App. 25 Aug. 2023) (unpub. op.). This court also deferred consideration of issues (1) and (2) until the case was re-docketed with this court. *Id.* at *2.

On remand new post-trial processing was completed. On 2 November 2023, the convening authority again took no action on the findings or sentence, and a new entry of judgment was signed by the military judge on 30 November 2023. Subsequently, Appellant's case was re-docketed with this court on 21 December 2023. On 5 March 2024, Appellant filed a new brief with this court and raised one additional issue: (4) whether the sentence to a bad-conduct discharge is inappropriately severe. On 15 February 2024, this court ordered oral argument on Appellant's first issue regarding the scope of the victim's unsworn statement. Oral argument was conducted on 10 April 2024.

With regard to issue (3), we find that the convening authority's latest action and the new entry of judgment remedied the error identified in our earlier opinion. Specifically, we find Appellant was provided with an opportunity to rebut victim matters prior to the convening authority making a decision. We agree with the parties that issue (3) has been resolved. We turn our attention now to Appellant's remaining issues.

Finding no error that materially prejudiced a substantial right of Appellant with respect to findings of guilty, we affirm the findings. However, we conclude the sentence is inappropriately severe and modify it accordingly.

## I. BACKGROUND

Appellant pleaded guilty to unlawfully touching LP[5] on the leg with her hand. According to the stipulation of fact, both Appellant and LP were stationed at Tinker Air Force Base, Oklahoma. On 31 December 2020, Senior Airman (SrA) JC hosted a New Year's Eve party at his off-base house. Six

---

[5] At the time of the offense, LP was an active duty servicemember in the United States Air Force.

people attended this party; all attendees were members of the same squadron, and a few of the attendees were junior in rank to Appellant. Appellant and LP arrived at the party around 1930 hours and began drinking various alcoholic beverages until approximately 2315 hours. According to the stipulation of fact, "[a]t approximately 2315, after [Appellant's] family called, [Appellant] was sitting on the couch next to [LP] in the living room. While sitting next to [LP], [Appellant] touched [LP] on the leg with [Appellant's] hand." Additionally, Appellant agreed in the stipulation of fact that the touching was done unlawfully with force or violence, and that the touch was intentional and without the consent of LP. During the guilty plea inquiry, Appellant stated, "I was sitting on the couch next to [LP], I touched her leg with my hand. When I acted as I did, I did so of my own free will and I was aware of what I was doing. I did not touch [LP] on accident, I acted intentionally."

## II. DISCUSSION

### A. The Victim's Unsworn Impact Statement

Appellant argues that the military judge committed plain error by allowing the victim's unsworn impact statement to address matters outside the scope of permissible victim impact. Appellant lodges two categories of complaints concerning LP's unsworn victim impact statement. First, Appellant contends that it is unreasonable to believe that LP suffered the effects she described "as a result of a single touch of [LP]'s leg by [Appellant]'s hand." Second, Appellant argues that any impact LP suffered from her participation with the Air Force Office of Special Investigations (OSI) investigation and her subsequent expedited transfer and quarantine is improper. We agree, in part, with Appellant's second contention; however, after testing for prejudice we conclude that no relief is warranted for this claim.

### 1. Additional Background

After the military judge accepted Appellant's guilty plea, the parties moved into the presentencing phase of the court-martial. The military judge inquired as to whether there was a crime victim present who desired to be heard. LP then asked to present a written unsworn victim impact statement which was marked as Court Exhibit A. The military judge asked if the "[D]efense had an opportunity to review those matters and/or interview the victim." Trial defense counsel confirmed that they had. The military judge did not ask trial defense counsel if there were any objections to Court Exhibit A, and trial defense counsel did not independently object.

The military judge allowed LP to read her unsworn victim impact statement. The entire statement reads as follows, with the italicized portions Appellant identified as improper on appeal:

> Your Honor, thank you for allowing me this opportunity to explain the impact of [Appellant]'s actions on my life.
>
> When I think back to that New Year's Eve party, I am taken back to my last memory, taking a sip of an alcoholic lemonade drink, and then fast forwarding to waking up the next morning, full of confusion, and with no memory of a huge chunk of the night before. I remember, hours after what [Appellant] did, still not being in the right state of mind and under the influence of alcohol. I felt awful and was still nauseous from the night before.
>
> I became even more confused and concerned when I realized things felt out of place. When I saw [Appellant], I remember immediately her asking if I was okay, and not understanding why she would ask me that. Throughout that day, it became worse and worse as I gathered the details of what she had done to me from the other people at the party. As I came to fully understand the gravity of what happened, and that [Appellant] had assaulted me during the part of the night I had no memory, a wave of disbelief and discussed [sic] washed over me and I knew what [Appellant] had done was not okay.
>
> After deciding to report [Appellant]'s assault on me, I *felt violated, ashamed, and embarrassed. I also had to endure an extensive interview with OSI, where I had to relive a play-by-play of what [Appellant] had done. Going through all of this was extremely traumatic.*
>
> After that morning, I developed a fear of seeing [Appellant] on base or in our workplace. I also did everything possible to avoid seeing any of the other people that were at [SrA JC]'s house that night. I would show up to my shifts as late as possible and would take longer alternative routes into my work to avoid any possibility of running into her.
>
> I became *extremely depressed and sad* after what she did. I found myself going directly home to my dorm room, where I would lay in bed and try to sleep as soon as possible to escape the feelings I was having and to avoid having to process what happened. I endured this for weeks, until *I finally decided to request an expedited transfer* and was given the option of moving to Kadena

Air Base, Japan. I didn't ask to go [overseas] or to Japan; this was effectively my only option because of my very small career field.

You would think I would have been excited for an [overseas assignment] to Japan, but I was reluctant to accept the assignment because I was going to have to leave my friends, and be even further away from my family and my entire support system. I felt it was wrong I was having to pick up my life and start new somewhere else when I was not the one who did something wrong. Throughout the entire process I felt extremely alone. People at work didn't understand why I was leaving because I had just arrived at Tinker [Air Force Base] a few months prior. I didn't even feel comfortable talking to my family about what happened.

When I got to Japan, *I was immediately met with a two-week quarantine, where I was isolated from everyone.* During those two weeks it was impossible for me to not be confronted with the thoughts of what had happened and the knowledge that I was only in Japan because of it. I had to build my reputation in my new unit from scratch, and restart the process of meeting coworkers and finding friends. When trying to make friends I found it so difficult to place even a little trust in people I didn't know. A lot of the time I said no to going out with friends. The friends I had didn't understand what I was going through or why I was so reserved. I cannot put into words the difficulty that I faced going through this, or what it felt like having multiple periods of stress and sadness to the point I felt like I could barely function. All of this was made worse by staying involved in the case, and having what felt like constant check ins with my leadership was a continual reminder of what happened.

[Appellant] taking accountability for her criminal actions is a start, but I believe she needs a strong punishment to hold her accountable for what she did and its impact on me. So many aspects of my life changed permanently because of [Appellant]. New Year's Eve used to be a night to enjoy with friends or family, but now each year it is a painful reminder of the assault. Her punishment should include enough time to ensure she reflects on her inappropriate behavior. I want her to truly realize what she has done, so that she walks away from this process knowing she cannot do this to anyone else.

> Going through this process for me has been so *painful and difficult*. It is important for me to explain all of [the] ways it has impacted my life. *A piece of me died that night*, I am not the same person I used to be. I am working every single day to not let what happened have control over me. I am going to continue to live my life positively and take every step I can on the road to recovery. Thank you, Your Honor.

Trial defense counsel did not object during or after LP delivered her unsworn victim impact statement. The military judge did not interrupt LP's statement.

### 2. Law

"Congress has granted the victim of an offense under the UCMJ the right to be 'reasonably heard' during any sentencing hearing related to that offense." *United States v. Edwards*, 82 M.J. 239, 245 (C.A.A.F. 2022) (citing Article 6b(a)(4)(B), UCMJ, 10 U.S.C. § 806b(a)(4)(B)).

A crime victim is defined as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty." Rule for Courts-Martial (R.C.M.) 1001(c)(2)(A); *see also* Article 6b, UCMJ. "[V]ictim impact includes any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B).

Unsworn victim impact statements must comply with R.C.M. 1001(c)(2)(A) to be presented at sentencing. *See United States v. Hamilton*, 78 M.J. 335, 337 (C.A.A.F. 2019). As victim impact statements are not "evidence" under R.C.M. 1001(c), "the military judge assesses the content of a victim's unsworn statement not for relevance, but for scope." *United States v. Hamilton*, 77 M.J. 579, 586 (A.F. Ct. Crim. App. 2017) (en banc), *aff'd*, 78 M.J. 335 (C.A.A.F. 2019); *see also United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021) (holding a victim impact statement was not "evidence" and not subject to the Military Rules of Evidence). Victim impact statements are not unfettered. *See Edwards,* 82 M.J. at 246.

Interpreting R.C.M. 1001(c) is a question of law that we review de novo. *United States v. Cunningham*, 83 M.J. 367, 371 (C.A.A.F. 2023) (footnote and citation omitted), *cert. denied*, 144 S. Ct. 1096 (2024). We review a military judge's decision to accept an unsworn victim impact statement for an abuse of discretion. *Edwards*, 82 M.J. at 243. "The judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002) (internal quotation

marks and citation omitted). In the absence of an objection at trial, we review claims of erroneous admission of an unsworn victim impact statement for plain error, where an appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (citations omitted).

When the content of a victim impact statement does not comport with R.C.M. 1001(c) and is introduced during sentencing proceedings, "the test for prejudice is whether the error substantially influenced the adjudged sentence." *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (internal quotation marks and citation omitted). This is determined by evaluating "(1) the strength of the Government's case; (2) the strength of the [D]efense['s] case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (citation omitted). "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *Id.* (citation omitted). "The Government bears the burden of showing the error was harmless, but need not show harmlessness beyond a reasonable doubt." *United States v. Harrington*, 83 M.J. 408, 422 (C.A.A.F. 2023) (citation omitted) (affirming our court's decision with respect to findings, but reversing with respect to sentence where "the Government failed to meet its burden of demonstrating that cumulative errors did not have a substantial influence on the adjudged sentence").

"[I]t is highly relevant when analyzing the effect of error on the sentence that the case was tried before a military judge, who is presumed to know the law." *Cunningham,* 83 M.J. at 372 (alteration in original) (quoting *Barker*, 77 M.J. at 384).

### 3. Analysis

Since trial defense counsel did not object to the victim's unsworn statement, we review the admission of the victim's unsworn statement for plain error. We begin our analysis by addressing Appellant's first contention: "It strains credulity to believe that as a result of a single touch of [LP's] leg by [Appellant's] hand, [LP] suffered the lasting effects discussed in her unsworn statement." Here, Appellant takes issue with portions of LP's statement where she described feeling "violated, ashamed, and embarrassed" and "extremely depressed and sad," and that she was "not the same person" after being assaulted. We decline to find that there is a right or a wrong way for a victim to feel or react after having been the victim of an offense. As this court has recently stated, "The notion that everyone is unique and that people respond differently is well within the knowledge and experience of a factfinder." *United*

*States v. Scilluffo,* No. ACM 39539, 2020 CCA LEXIS 62, at *66 (A.F. Ct. Crim. App. 4 Mar. 2020) (unpub. op.). Therefore, we do not find these portions of LP's victim impact statement to run afoul of R.C.M. 1001(c) or the caselaw interpreting the rule.

That said, we remind military judges of their duty as gatekeepers to ensure the content of the victim's unsworn statement is within the scope of R.C.M. 1001(c). *See Edwards*, 82 M.J. at 243. That scope includes "impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B). Military judges must be satisfied that the victim attributes the stated impact—at least in significant part—to the offenses of which the appellant was convicted. They perform this duty without making credibility determinations; instead, they can rely on the clear assertions of the victim or the victim's designee, made orally or in the written statement itself.

With regards to Appellant's second contention, we find that two portions of LP's victim impact statement do not comport with R.C.M. 1001(c). Those portions include LP requesting an expedited transfer to Kadena Air Base, Okinawa, Japan, and LP's brief discussion on a subsequent two-week quarantine upon her arrival in Japan. While each of these portions of her victim impact statement might be accurate, we find they do not directly relate to or arise from the offense of which Appellant was convicted. Specifically, these portions of the statement are too far removed in time or type to the convicted offense. *Cf. Hardison*, 64 M.J. at 280–82 (finding "directly related" in the context of aggravation evidence "must be direct as the rule states, and closely related in time, type, and/or often outcome, to the convicted crime"). As both parties acknowledge, an expedited transfer is a process that is available to individuals who make an unrestricted report of sexual assault, not a report of an assault consummated by a battery. Here, Appellant was not convicted of sexual assault. Therefore, LP's discussion of the expedited transfer does not relate or arise from the offense of which Appellant was convicted. As for the two-week quarantine LP was subject to after arriving in Japan, it seems clear that the quarantine was the direct result and arising from a world-wide pandemic (COVID-19) and not the offense for which Appellant was convicted. We find that the military judge committed plain and obvious error by allowing LP to refer to the expedited transfer request and subsequent quarantine.

Having found plain error, we now test for prejudice. Our consideration of the *Barker* factors begins with our assessment of the strength of the Government's case and strength of the Defense's case. Here, we find these two factors weigh in favor of the Government, largely because the Government's case demonstrated that Appellant assaulted a fellow Air Force servicemember

at a party among coworkers, which directly contradicted the central theme of Appellant's sentencing case which had centered around her character as a good wingman and friend. Turning to the third and fourth *Barker* factors, we find that these also weigh in favor of the Government, largely due to the fact that the errors in the victim impact statement were few and relatively minor, and that nothing in the record indicates the military judge gave those parts of the statement substantial weight.[6] *See Cunningham*, 83 M.J. at 373–74. We also have considered that due to the plea agreement in this case, the military judge had limited discretion with regards to the sentence; the plea agreement required the military judge to adjudge at least 14 days of confinement and a bad-conduct discharge. Therefore, we are confident that the military judge sentenced Appellant only for the crime of which she was convicted, and that the errors did not substantially influence the sentence.

Finally, even if we assume prejudice as a result of the errors in the victim's unsworn statement, we would not grant any additional relief to the relief we provide *infra* under our sentence appropriateness review.

## B. Trial Counsel's Sentencing Argument

Appellant argues that circuit trial counsel committed prosecutorial misconduct in his sentencing argument by "painting" Appellant as a predator. We disagree.

### 1. Additional Background

Appellant takes exception to three portions of the Prosecution's sentencing argument. First, she points to the portions of circuit trial counsel's sentencing argument referencing the word "opportunity." Specifically, Appellant points to the word "opportunity" being used 14 times during the sentencing argument.

Second, Appellant points to the portion of the argument in which circuit trial counsel states, "Your Honor saw the victim give her unsworn, the impact on her from [Appellant's] crime, from [Appellant's] choice, the intentional choice when the victim was intoxicated. You have Prosecution Exhibit 1[, the stipulation of fact,] that talks about how intoxicated she was, how many drinks she had when [Appellant] assaulted her that night."

Finally, Appellant takes issue with a portion of the sentencing argument in which circuit trial counsel argued that confinement was necessary to "[p]rotect people like the victim in the future, Your Honor. When [Appellant] finishes her sentence, when [Appellant] is living in the civilian world, she should remember what she learned about opportunity and protect those other

---

[6] Similarly, we see no indication in the record that the military judge considered the conduct alleged in the dismissed specifications in arriving at an appropriate sentence.

people who might be around her, who see her as a friend . . . ." Appellant's trial defense counsel did not object to any portion of circuit trial counsel's sentencing argument. Appellant now argues circuit trial counsel's sentencing argument that focused on opportunity, intoxication, and protection unfairly painted Appellant as a predator.

**2. Law**

We review allegations of improper argument and prosecutorial misconduct de novo. *United States v. Voorhees,* 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted). However, if the defense does not object to the argument by trial counsel, we review the issue for plain error. *United States v. Norwood*, 81 M.J. 12, 19 (C.A.A.F. 2021) (citation omitted). To establish plain error, an "[a]ppellant has the burden of establishing (1) there was error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (internal quotation marks and citation omitted). "As all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

"In his arguments, trial counsel may strike hard blows, [but] he is not at liberty to strike foul ones." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (alteration in original) (internal quotation marks and citation omitted). "[T]rial counsel [may] argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Id.* (internal quotation marks and citation omitted). "He may not, however, inject his personal opinion into the panel's deliberations, inflame the members' passions or prejudices, or ask them to convict the accused on the basis of criminal predisposition." *Id.*

"Relief will be granted only if the trial counsel's misconduct 'actually impacted on a substantial right of an accused (i.e., resulted in prejudice).'" *United States v. Frey*, 73 M.J. 245, 249 (C.A.A.F. 2014) (quoting *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005)). "In assessing prejudice, we look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial." *Fletcher*, 62 M.J. at 184 (citation omitted). *Fletcher* set out three factors to weigh in the determination of the prejudicial effect of improper argument: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Id.* "In other words, prosecutorial misconduct by a trial counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *Id.*

Finally, "the argument by a trial counsel must be viewed within the context of the entire court-martial." *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F 2000). Thus, "[t]he focus of our inquiry should not be on words in isolation, but on the argument as viewed in context." *Id.* (internal quotation marks and citations omitted).

### 3. Discussion

Since trial defense counsel did not object at trial to circuit trial counsel's sentencing argument, we review the argument for plain error.

Here, we do not find any error, let alone plain or obvious error. Specifically, we find circuit trial counsel never referred to Appellant as a predator and we do not infer that from the argument. We also find nothing improper by trial counsel using the word "opportunity" 14 times during argument. Here trial counsel properly argued the evidence of record, as well as reasonable inferences fairly derived from such evidence. Appellant admitted in the stipulation of fact and during the plea inquiry that her conduct was the product of an intentional choice or act, and as such, the Prosecution was able to comment on that. Additionally, Appellant stipulated to the amount of alcohol LP consumed that night. Therefore, circuit trial counsel was permitted to argue that evidence in the record.

Finally, as to circuit trial counsel's argument concerning the protection of society or future potential victims, we find this to be proper argument. Among the principal purposes of sentencing are the "[p]rotection of society from the wrongdoer," "deterrence of the wrongdoer and those who know of [their] crime and [their] sentence from committing the same or similar offenses." *United States v. Ohrt*, 28 M.J. 301, 305 (C.M.A. 1989); *see also* R.C.M. 1001(h) (citing R.C.M. 1002(f), where trial counsel may reference certain sentencing considerations, including adequate deterrence and protection of others "from further crimes by the accused"). Therefore, there was nothing improper about the argument.

We conclude that Appellant has failed to establish plain error, and therefore is not entitled to any relief.

## C. Sentence Severity

Appellant contends that the sentence to include a bad-conduct discharge is inappropriately severe. Specifically, Appellant argues the sentence did not take into consideration her strong rehabilitative potential, or that her sentence

was unfairly impacted by circuit trial counsel's sentencing argument.[7] We find that Appellant's sentence is inappropriately severe and provide appropriate relief.

### 1. Additional Background

As consideration for Appellant's guilty plea to one specification of assault consummated by a battery against LP, the convening authority agreed to dismiss, with prejudice, two specifications of sexual assault upon LP. The plea agreement in this case also required, *inter alia,* Appellant to enter into a reasonable stipulation of fact concerning the one specification of assault consummated by a battery against LP and not object to the use of the stipulation of fact during the guilty plea inquiry or the presentencing proceedings. Additionally, the plea agreement required Appellant to agree that the military judge would be required to impose a sentence which consisted of at least 14 days of confinement and a bad-conduct discharge.

During the court-martial, the military judge specifically inquired into the requirement to adjudge a bad-conduct discharge. During the colloquy, the military judge confirmed that Appellant understood the magnitude of the decision and expressly confirmed Appellant understood: (1) that the only discharge the court could adjudge was a bad-conduct discharge based on the maximum punishment for the offense to which Appellant pleaded guilty; (2) that a bad-conduct discharge would forever adversely stigmatize the character of Appellant's military service and it would limit her future employment and educational opportunities; (3) that a bad-conduct discharge might adversely affect her future with regard to legal rights, economic opportunities, and social acceptability; and (4) that by receiving a bad-conduct discharge Appellant would lose substantially all benefits from the Department of Veterans Affairs and the military establishment, as well as benefits normally given by other governmental agencies.

The military judge then asked Appellant if she had "thoroughly discussed [her] desires with [her] defense counsel." Appellant confirmed that she had, and she was satisfied with her trial defense counsel's advice. The military judge then confirmed again that Appellant understood the ramifications of a bad-conduct discharge, and asked whether she was "aware that if [she] did not receive a bad[-]conduct discharge from this court-martial that [her] chain of command may very well try to administratively separate [her] from the

---

[7] Appellant also raised another argument relating to her original clemency submission in this case, but she has not claimed any error relating to the advice given to the convening authority upon remand.

service," to which Appellant expressly agreed. At the end of the colloquy, the military judge asked Appellant, "[k]nowing all that I and your defense counsel have explained to you, is it your express desire to be discharged from the service with a bad[-]conduct discharge." Appellant answered, "Yes, Your Honor." Finally, understanding that it was Appellant's intent to have her trial defense counsel argue for a bad-conduct discharge, the military judge then confirmed that Appellant consented to her trial defense counsel arguing that she desired to be discharged with a bad-conduct discharge.

The military judge then asked counsel whether there was any question regarding the enforceability of the plea agreement provision requiring the military judge to adjudge a bad-conduct discharge. Trial counsel indicated they saw no reason to question the enforceability of the provision. Trial defense counsel stated, "Our client has agreed as proposed by the [G]overnment to get the benefit of the bargain." Trial defense counsel later stated, "Our client has agreed to this condition in order to get the benefit of the deal and we are not aware of any express condition that would prevent you from adjudging it, sir." The military judge then declared the provision "legally permissible."

In the presentencing proceedings, the Government presented two exhibits which consisted of Appellant's personal data sheet and one performance report. These documents established that Appellant had been on active duty for approximately two years at the time of her crime, and that she promoted to the grade of E-4 approximately six months prior to assaulting LP. As discussed *supra*, LP then delivered her unsworn victim impact statement. The Defense then offered 14 character letters discussing Appellant's positive rehabilitation potential, a nomination form for her early promotion, a certificate of early promotion to the grade of E-4, a copy of her associate's degree, a photo compilation, and an unsworn statement. We note that Appellant's unsworn statement did not address an appropriate punishment.

In the substance of the Government's sentencing argument, circuit trial counsel mentioned a bad-conduct discharge once. Specifically, circuit trial counsel stated "Your Honor, she should also receive a bad[-]conduct discharge because her conduct was so bad that she deserves that sort of punishment, that lifelong punishment for her actions." Trial defense counsel, on the other hand, mentioned a bad-conduct discharge four times and referred to it as a "significant punishment" that provided "deterrence." Trial defense counsel also argued, "Your Honor, two weeks, 14 days of confinement, and a bad[-]conduct discharge sends a significant message. If any [more] punishment is needed [ ], Your Honor, then take her stripes."

The maximum punishment authorized based on Appellant's plea alone included a bad-conduct discharge, confinement for six months, reduction to the grade of E-1, forfeiture of all pay and allowances, and a reprimand. Cognizant of the plea agreement, the military judge sentenced Appellant to a bad-conduct discharge, 37 days of confinement, and reduction to the grade of E-2.

**2. Law**

We review issues of sentence appropriateness de novo. *See United States v. McAlhaney*, 83 M.J. 164, 167 (C.A.A.F. 2023) (citing *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006)). Our authority "reflects the unique history and attributes of the military justice system, [and] includes . . . considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact. Article 66(d), UCMJ. In reviewing a judge-alone sentencing, we "must consider the appropriateness of each segment of a segmented sentence and the appropriateness of the sentence as a whole." *See United States v. Flores*, __ M.J. __, No. 23–0198, 2024 CAAF LEXIS 162, at *1 (C.A.A.F. 14 Mar. 2024).

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although the Courts of Criminal Appeals are empowered to "'do justice[ ]' with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)). In the end, "[t]he purpose of Article 66[ ], UCMJ, is to ensure 'that justice is done and that the accused gets the punishment he deserves.'" *United States v. Sanchez*, 50 M.J. 506, 512 (A.F. Ct. Crim. App. 1999) (quoting *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988)).

R.C.M. 1003(b)(8)(C) describes the purpose of a bad-conduct discharge as "a punishment for bad-conduct rather than as a punishment for serious offenses of either a civilian or military nature."

"Absent evidence to the contrary, [an] accused's own sentence proposal is a reasonable indication of its probable fairness to him." *United States v. Cron*, 73 M.J. 718, 736 n.9 (A.F. Ct. Crim. App. 2014) (quoting *United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979) (citation omitted)). Thus, when considering the appropriateness of a sentence, courts may consider that a pretrial agreement or plea agreement, to which an appellant agreed, placed limits on the sentence

that could be imposed. *See United States v. Fields*, 74 M.J. 619, 625–26 (A.F. Ct. Crim. App. 2015).

### 3. Analysis

Despite Appellant agreeing to, and arguing for, a bad-conduct discharge, Appellant now contends that the approved bad-conduct discharge portion of her punishment is inappropriately severe. In support, Appellant cites much of the same evidence that she offered during her sentence hearing. After conducting a thorough review of the entire record, specifically considering the Appellant, the nature and seriousness of the offense, Appellant's record of service, and all matters contained in the record of trial, we find Appellant's sentence is inappropriately severe and provide appropriate relief.

Here, Appellant, consistent with her pleas, was found guilty of assaulting another Air Force member at a New Year's Eve party. The assault occurred after the victim had been drinking and in the presence of Appellant's peers and subordinates. We note that Appellant did not provide any extenuating circumstances for touching LP on the leg during her guilty plea inquiry or through any evidence admitted at sentencing. The record also suggests that Appellant's conduct impacted LP in a negative way and that she now finds it difficult to trust other people.

It is also worth noting in this case that Appellant, with the assistance of competent counsel, negotiated and secured a plea agreement, where she received the benefit of having two specifications of sexual assault withdrawn and dismissed with prejudice, in exchange for her plea of guilty to a separate offense. This benefit not only reduced Appellant's criminal exposure, but it also ensured Appellant would not be exposed to additional significant collateral consequences that were possible under the dismissed specifications. In exchange for this benefit, Appellant agreed to a minimum punishment that would include at least 14 days of confinement and a bad-conduct discharge. The military judge properly ensured the plea agreement was entered into voluntarily and by Appellant's own free will, and also ascertained that Appellant did not wish to withdraw from the agreement. As her counsel stated during pre-sentencing, Appellant received the benefit of her bargain.

We also find it significant that Appellant's counsel in this case argued for a sentence that included 14 days of confinement and, with Appellant's express concurrence, a bad-conduct discharge, and that the argument occurred after the military judge discussed with Appellant, in detail, the requirement in the plea agreement for him to adjudge a bad-conduct discharge. Finally, we note that the military judge did not *sua sponte* reject the plea agreement as

unconscionable or recommend to the convening authority any suspension or reduction of Appellant's punishment.

We find that when an appellant bargains for a specific sentence with the advice of counsel, and then argues for a sentence consistent with the agreed-upon terms, that is a "reasonable indication of its probable fairness to h[er]." *Hendon*, 6 M.J. at 175 (citation omitted). Nonetheless, based on our collective experiences as judge advocates and appellate judges, and taking into account the principles of sentencing and the matters in aggravation, as balanced by the matters in mitigation, we conclude that Appellant's sentence to confinement for 37 days is inappropriately severe.

In making this determination, we are not engaging in an act of clemency; rather, we are fulfilling our duty under Article 66(d), UCMJ, to maintain uniformity and even-handedness of court-martial sentencing decisions. *See Sothen*, 54 M.J. at 296. Our decision is not made lightly and was the product of considerable reflection, deliberation, and debate. *See Lacy*, 50 M.J. at 288 (citing *United States v. Olinger*, 12 M.J. 458, 461 (C.M.A. 1982)) ("Under Article 66(c), [UCMJ,] Congress has furthered the goal of uniformity in sentencing in a system that values individualized punishment by relying on the judges of the Courts of Criminal Appeals to 'utilize the experience distilled from years of practice in military law to determine whether, in light of the facts surrounding [the] accused's delict, his sentence was appropriate.'" (Alteration in original).); *see also United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001) (citing *United States v. Ballard*, 20 M.J. 282, 286 (C.M.A. 1985)) (affirming the importance of the "accumulated knowledge" of "experienced Court of Criminal Appeal judges" in assessing for sentence appropriateness). Consistent with Appellant's plea agreement and her counsel's sentencing argument, we conclude that a sentence of a bad-conduct discharge, confinement for 14 days, and reduction to the grade of E-2 should be affirmed.

## III. CONCLUSION

The findings are correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred. We affirm only so much of the sentence that includes a bad-conduct discharge, confinement for 14 days, and reduction to the grade of E-2**.** Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence, as modified, are **AFFIRMED.**

RAMÍREZ, Judge (concurring in part and dissenting in part):

I concur with the panel as to the first three issues. As to the issue of sentence appropriateness, while I accept that the majority concludes that Appellant's sentence to confinement for 37 days is inappropriately severe, I dissent as to whether the sentence of a bad-conduct discharge is inappropriately severe and would find that it is.

Appellant pleaded guilty to unlawfully touching LP on the leg with Appellant's hand while they were both drinking alcohol at a New Year's party. That is what she was to be sentenced for. Appellant's plea agreement required her to stipulate as to the facts in the case. She did. The facts, according to both the stipulation of fact and the plea inquiry, did not inform the military judge where on LP's leg Appellant touched. Was it at the knee? At the hip? Was it over the clothes? Under the clothes? How long did this take place? What was so aggravating about this leg touch that warranted a bad-conduct discharge?

The plea agreement also required Appellant to agree that the military judge would be required to impose a sentence which consisted of at least 14 days of confinement and a bad-conduct discharge.

When we review sentences for appropriateness, we are to ensure that an appellant receives the punishment she deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This is based on individualized consideration of the specific appellant, including her character as well as the nature and seriousness of the offense. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982).

I understand that Appellant agreed to receive a bad-conduct discharge and when considering the appropriateness of a sentence, courts may consider that. However, a sentence within the range of a plea agreement may still be inappropriately severe. This is because our authority to review a case for sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to, considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). As such, we may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. *Id.*; Article 66(d), UCMJ, 10 U.S.C. § 866(d).

Appellant agreeing to the terms of the plea agreement, which included a bad-conduct discharge, is one factor of its probable fairness to her. However, that is all it is, one factor. As our sister court recently explained, "this does not mean we surrender to the parties or military judge our duty to determine

18

sentence appropriateness." *United States v. Williams*, No. 202300217, 2024 CCA LEXIS 111, at *6 (N.M. Ct. Crim. App. 15 Mar. 2024) (unpub. op.).

It is clear that Article 66(d), UCMJ, mandates us to affirm only as much of the sentence as we find correct in law and fact and determine should be approved. As such, we must ask ourselves whether the punishment of a bad-conduct discharge, 37 days in confinement, and a two-grade reduction, in this specific case, is sufficient, but not greater than necessary, to promote justice, and to maintain good order and discipline in the armed forces. Rule for Courts-Martial (R.C.M.) 1002(f).

Here, for sentencing purposes, the military judge had the stipulation of fact and the plea inquiry, which as explained above, were simply that Appellant touched LP's leg. This is the extent of the facts that the military judge had to consider. Appellant touched LP on the leg. There were no additional facts in aggravation.

Next, the military judge had the Prosecution's two exhibits – Appellant's enlisted performance reports and her personal data sheet. Nothing showed derogatory data or prior misconduct. On the other hand, Appellant provided the military judge 20 defense exhibits, including character letters. At 23 years of age, and a college graduate, Appellant achieved the rank of senior airman below the zone, ahead of her peers. Finally, the military judge had unsworn statements from both LP and Appellant.

What the military judge did not have, and what we do not have, are any specifics about the specifications that were dismissed. We are aware that pursuant to the plea agreement, two specifications of sexual assault upon LP were withdrawn and dismissed with prejudice. However, the fact that she was charged with other crimes is not relevant. The fact that those alleged criminal offenses were dismissed is not relevant.

In giving individualized consideration to the nature and seriousness of the touching of LP's leg and the character of Appellant, the facts provided, and lack of aggravation, the bad-conduct discharge portion of the sentence is inappropriately severe.

Both trial counsel and the military judge, when involved in a guilty plea, have their roles. The trial counsel's role is to prepare a stipulation of fact, when one is called for, that contains the necessary facts to support the boundaries of the plea agreement. This may include facts, as stipulated by an accused, or exhibits or evidence in aggravation. The military judge's role includes to "impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces." R.C.M. 1002(f). Military judges are not rubber stamps of the Government.

19

There were three options here: (1) trial counsel could have included the necessary facts in the stipulation of fact which would have warranted the confinement and bad-conduct discharge; (2) the military judge could have asked sufficient factual questions to flush out the evidence to be able to justify the confinement and punitive discharge; or (3) the military judge could have not accepted the plea agreement as to ensure the mandate of R.C.M. 1002(f) was followed based on the individualized consideration of this specific Appellant, her character, as well as the nature and seriousness of the offense.

As our superior court explained nearly 40 years ago, in *United States v. Ballard*, 20 M.J. 282, 286 (C.M.A. 1985):

> [T]he experienced and professional military lawyers who find themselves appointed as trial judges and judges on the courts of military review have a solid feel for the range of punishments typically meted out in courts-martial. Indeed, by the time they receive such assignments, they can scarcely help it; and we have every confidence that this accumulated knowledge is an explicit or implicit factor in virtually every case in which a military judge imposes sentence or a court of military review assesses for sentence appropriateness. Thus, to hold that a trial or appellate court may not consider the sentences in other cases would be folly.

I would find that a sentence of 14 days of confinement and a two-grade reduction for touching LP's leg adequately reflects the seriousness of the offenses committed, promotes respect for the law, provides just punishment for the offense, promotes adequate deterrence of misconduct, protects others from further crimes by Appellant, and serves to rehabilitate Appellant. In conducting a de novo review, I find the bad-conduct discharge to be inappropriately severe.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court