# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40372 (f rev)

————————————

**UNITED STATES**
*Appellee*

v.

**Carson C. CONWAY**
Captain (O-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 19 July 2024

————————————

*Military Judge*: Julie L. Pitvorec.

*Sentence*: Sentence adjudged 22 February 2022 by GCM convened at Laughlin Air Force Base, Texas. Sentence entered by military judge on 18 October 2022: Dismissal, confinement for 5 months, and a reprimand.

*For Appellant*: Major Matthew L. Blyth, USAF; Major David L. Bosner, USAF.

*For Appellee*: Lieutenant Colonel James Peter Ferrell, USAF; Major Olivia B. Hoff, USAF; Captain Tyler L. Washburn, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, RAMÍREZ, and KEARLEY, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RAMÍREZ, Judge:

In accordance with Appellant's pleas, and pursuant to a plea agreement, a general court-martial comprised of a military judge sitting alone convicted Appellant of one specification of distribution of intimate visual images, in violation of Article 117a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 917a,[1] and one specification of knowingly making a false written statement in connection with the acquisition of a firearm, in violation of Article 134, UCMJ, 10 U.S.C. § 934. Three specifications alleging conduct unbecoming an officer and a gentleman, in violation of Article 133, UCMJ, 10 U.S.C. § 933, were dismissed with prejudice consistent with the terms of Appellant's plea agreement. The military judge sentenced Appellant to a dismissal, confinement for five months, and a reprimand. The convening authority took no action on the findings or sentence.

Appellant raises five issues on appeal, which we reword: (1) whether omissions from the record of trial require sentencing relief or remand for correction; (2) whether a plea agreement requiring dismissal renders the sentencing procedure an "empty ritual" and violates public policy; (3) whether trial counsel committed prosecutorial misconduct during the sentencing argument; (4) whether Appellant's sentence is inappropriately severe; and (5) whether 18 U.S.C. § 922 is unconstitutional as applied to Appellant.

This case is before us a second time. In response to issue (1), on 5 December 2023 we returned the record of trial to the military judge pursuant to Rule for Courts-Martial (R.C.M.) 1112(d) to address omissions or deficiencies in the record. *United States v. Conway*, No. ACM 40372, 2023 CCA LEXIS 501, at *4 (A.F. Ct. Crim. App. 5 Dec. 2023) (unpub. op.).

The record of trial is now complete. A corrected record was re-docketed with this court on 1 March 2024. After the case was re-docketed, Appellant submitted a brief where he provided an additional issue, relating to his first issue: (6) whether the numerous omissions and delay in the Government completing the corrected record warrants sentencing relief. Appellant does not point to any prejudice for us to consider, acknowledges that the errors have been corrected, that he "has already served his confinement[,] and recognizes this [c]ourt will not erase his dismissal through *Tardif* relief." *See generally United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). As to this additional issue, we have carefully considered whether relief for excessive post-trial delay is appropriate in the absence of a due process violation. *See id.* at 224–25. After considering the factors enumerated in *United States v. Gay¸* 74 M.J. 736, 744

---

[1] All references in this opinion to the UCMJ, the Military Rules of Evidence, and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

(A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not. We now turn our attention to Appellant's remaining issues.

We have also carefully considered issue (5). As recognized in *United States v. Lepore*, 81 M.J. 759, 763 (A.F. Ct. Crim. App. 2021) (en banc), this court lacks the authority to direct modification of the 18 U.S.C. § 922(g) prohibition noted on the staff judge advocate's indorsement. *See also United States v. Vanzant*, __ M.J. __, No. ACM 22004, 2024 CCA LEXIS 215, at *24 (A.F. Ct. Crim. App. 28 May 2024) (concluding that "[t]he firearms prohibition remains a collateral consequence of the conviction, rather than an element of findings or sentence, and is therefore beyond our authority to review").

As to the remaining issues, we find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND[2]

### A. Wrongful Broadcast of Intimate Visual Images

Appellant and MV met in March 2020 at Laughlin Air Force Base (AFB), Texas, where they both served as instructor pilots. Aside from working together, they became friends and remained so until early December 2020.

At some point during their friendship, Appellant acquired nude photographs of MV without her permission. In early December 2020, he distributed the nude photos to two coworkers. On the first occasion, Appellant complained to KB, a mutual friend and instructor in the same squadron, that MV led him on. In an effort to prove his claim, Appellant sent two nude photos of MV to KB claiming that MV sent those to him. On a separate occasion, Appellant distributed nude images of MV to CL, another fellow instructor pilot from the squadron. In a Snapchat conversation where CL was attempting to dissuade Appellant from seeking a relationship with MV because MV was already in another relationship, Appellant sent two nude photographs of MV via Snapchat, implying that MV sent the photographs to Appellant because she was interested in Appellant and not in her boyfriend.

MV found out from friends that Appellant was sending them her nude photos. MV then confronted Appellant by text message and told him that he was no longer allowed to communicate with her on a personal level because on multiple occasions he had crossed the boundaries she established. Appellant responded claiming that he did not know what she was referring to, that it was MV who was trying to cover up that she had feelings for Appellant, that he would be telling MV's boyfriend about them, that she "essentially" cheated on

---

[2] The following facts in this section are derived from the stipulation of fact and Appellant's guilty plea inquiry.

her boyfriend, that it was Appellant who asked for space from MV, and that she made "stuff up in [her] head" as to what he had done. During his unsworn statement, Appellant admitted that it was he who developed "emotional feelings" for MV.

During the criminal investigation into Appellant's actions, the Government obtained search authorization for Appellant's phone, which contained the two photographs he sent via Snapchat along with seven more photographs of MV and photos of her lingerie and other intimate items. According to MV, she kept the intimate items at home, either hidden in a closet behind the door frame or in a closed box under her bed. MV never consented to Appellant having the photos and she did not know how Appellant obtained them. According to MV, she had only shared her nude photos with her boyfriend.

Although the trial transcript and the stipulation of fact do not expressly describe how Appellant acquired the nude photos, we note that the record is clear on the following four points: (1) Appellant had access to MV's home because he looked after her cats while she was away; (2) MV kept the nude photos on her laptop, which was in her home and not password protected; (3) the dates when the nude photos appeared on Appellant's phone coincided with dates when MV was out of town; and (4) Appellant possessed these photographs on his phone without MV's permission and distributed those photographs without her consent.

## B. Reckless Completion of Firearms Transaction Record

After Appellant was charged with specifications related to unlawful broadcasting, and the charges were referred to a general court-martial, he requested permission from his unit to retrieve his voluntarily surrendered personal firearms from the armory. The request was denied. Appellant then attempted to purchase a firearm. As part of the process of filling out the firearms transaction record form, Appellant was asked: "Are you under indictment or information in any court for a felony, or any other crime for which the judge could imprison you for more than one year, or are you a current member of the military who has been charged with violation(s) of the Uniform Code of Military Justice and whose charge(s) have been referred to a general court-martial?" Appellant responded, "No."

After providing his answers on the form in connection with acquiring a firearm, Appellant was required to read a disclaimer and acknowledge that if he had answered "Yes" to the question, indicated *supra*, he would have been "prohibited from receiving or possessing a firearm" and "that making any false oral or written statement is a crime punishable as a felony under Federal law, and may also violate State and/or local law." Appellant signed and dated the form and then presented his military identification card to prove his identity.

The Federal Bureau of Investigation's National Instant Criminal Background E-Check System identified Appellant as ineligible to receive the firearm, and the information regarding this attempted transaction was conveyed to investigators at Laughlin AFB. Appellant's response formed the basis of his conviction for recklessly completing a firearms form, which conduct was of a nature to discredit to the armed forces, in violation of Article 134, UCMJ.

## II. DISCUSSION

### A. The Plea Agreement as an "Empty Ritual"

Appellant argues that the mandatory dismissal provision of his plea agreement is contrary to public policy because the "term hollowed out the presentencing proceeding and deprived [him] of his opportunity to secure a fair and just sentence." As explained below, we disagree.

#### 1. Additional Background

Appellant entered into a plea agreement with the convening authority. Part of the plea agreement stated the military judge would sentence Appellant to a dismissal. According to the agreement, Appellant acknowledged that the provisions of the plea agreement were in his best interest; that his defense counsel explained the plea agreement to him; that no one forced him into the plea agreement; and that he could withdraw from the plea agreement at any time before the sentence was announced.

Additionally, during the guilty plea inquiry, trial counsel asked the military judge to discuss the mandatory dismissal provision of the plea agreement with Appellant. The military judge first asked Appellant if he understood that pursuant to the plea agreement between Appellant and the convening authority, the military judge would be required to sentence him to a dismissal from the Air Force. Appellant answered that he understood both the mandatory dismissal provision and how a dismissal is one of the most severe punishments that could be adjudged an officer. Furthermore, Appellant acknowledged it was in his best interest to agree to the provision of the plea agreement mandating dismissal in exchange for the benefit of a "confinement cap." Appellant concluded that no one forced him into that provision of the agreement. Appellant did not raise any allegation of ineffective assistance of counsel pertaining to his counsel's advice as to the plea agreement, either at trial or now on appeal.

#### 2. Law

We review questions of interpretation of plea agreements de novo. *See United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006) (citation omitted);

*United States v. Cron*, 73 M.J. 718, 729 (A.F. Ct. Crim. App. 2014) (citation omitted).

An accused and a convening authority may enter into an agreement which includes limitations on the sentence that may be adjudged. Article 53a(a)(1)(B), UCMJ, 10 U.S.C. § 853a(a)(1)(B); R.C.M. 705(b)(2)(E). Specifically, a plea agreement which limits the sentence may contain a specified sentence or portion of a sentence that shall be imposed by the court-martial. R.C.M. 705(d)(1)(D); *United States v. Hunter*, 65 M.J. 399 (C.A.A.F. 2008); Article 53a (a)(1)(B), (d), UCMJ.

"This court has adopted the principle that terms in a pretrial agreement are contrary to public policy if they interfere with court-martial fact-finding, sentencing, or review functions or undermine public confidence in the integrity and fairness of the disciplinary process." *United States v. Kroetz*, No. ACM 40301, 2023 CCA LEXIS 450, at *8–9 (A.F. Ct. Crim. App. 27 Oct. 2023) (unpub. op.) (alteration, internal quotation marks, and citation omitted), *rev. denied*, __ M.J. __, No. ACM 40301, 2024 CAAF LEXIS 230 (C.A.A.F. 25 Apr. 2024).

### 3. Analysis

Different panels of this court have dealt with the issue of whether a plea agreement requiring a punitive discharge renders the sentencing procedure an empty ritual and thus violates public policy. We highlight four opinions where this court found that a plea agreement requiring a punitive discharge does not render the sentencing procedure an empty ritual and, as such, does not violate public policy: *United States v. Reedy*, No. ACM 40358, 2024 CCA LEXIS 40, at *13–14 (A.F. Ct. Crim. App. 2 Feb. 2024) (unpub. op.); *Kroetz*, unpub. op. at *17–18; *United States v. Walker*, No. ACM S32737, 2023 CCA LEXIS 355, at *2–3 (A.F. Ct. Crim. App. 21 Aug. 2023) (unpub. op.) (citation omitted); *United States v. Geier*, No. ACM S32679 (f rev), 2022 CCA LEXIS 468, at *13 (A.F. Ct. Crim. App. 2 Aug. 2022) (unpub. op.), *rev. denied*, 83 M.J. 86 (C.A.A.F. 2022). We generally agree with the analysis and holdings of each.

Appellant's plea agreement term regarding a dismissal was not prohibited by law or public policy as it did not deprive Appellant of his opportunity to secure a fair and just sentence, nor did it render the sentencing proceeding an "empty ritual." Therefore, no relief is warranted.

### B. Improper Sentencing Argument

Appellant claims trial counsel "improperly harnessed dismissed charges to increase [his] sentence." He points to several phrases trial counsel used during the sentencing argument to claim that trial counsel was basing the argument on specifications that had been dismissed. We disagree.

## 1. Additional Background

Pursuant to the plea agreement, three specifications alleging conduct unbecoming an officer and a gentleman, in violation of Article 133, UCMJ, were dismissed with prejudice. The specifications alleged that Appellant: (1) wrongfully possessed intimate visual images of MV without her knowledge or consent; (2) wrongfully obtained visual images of intimate personal effects of MV without her knowledge or consent; and (3) wrongfully attempted to purchase a firearm while being prohibited from making such purchase.

Appellant pleaded guilty to knowingly, wrongfully, and without the explicit consent of MV, (1) distributing intimate visual images of MV, on divers occasions, when he knew or reasonably should have known that the visual images were made under circumstances in which MV retained a reasonable expectation of privacy regarding any distribution of the visual images; (2) when he knew or reasonably should have known that the distribution of the visual images was likely to cause harm, harassment, intimidation, or emotional distress, or to harm MV substantially with respect to her health, safety, career, reputation, or personal relationships; and (3) which conduct, under the circumstances, had a reasonably direct and palpable connection to a military mission or military environment. Appellant also pleaded guilty to recklessly and untruthfully completing a form in connection with the acquisition of a firearm from a licensed firearm dealer, and that the conduct was of a nature to bring discredit upon the armed forces. The military judge comprehensively covered this issue on the record.[3]

During presentencing proceedings, Appellant made an unsworn statement. In his statement, Appellant explained that he had "emotional feelings" for MV and by sending the nude photos of her to their co-workers, he violated her trust and caused her embarrassment and emotional distress.

JL, MV's boyfriend and a fellow pilot, testified in presentencing. He explained that by sending nude photos of MV, Appellant caused harm to MV's reputation. JL emphasized that the fighter pilot community is very small, and the news of what Appellant did spread throughout more than one military installation. Specifically, the talk of MV's nude photos "quickly traveled around the F-16 community" in the context of what Appellant alleged, namely that MV

---

[3] Pursuant the plea agreement, Appellant pleaded guilty by exceptions and substitutions to recklessly completing a firearms form which conduct was of a nature to bring discredit upon the armed forces, in violation of Article 134, UCMJ. He did not plead guilty to the original charge of knowingly making a false written statement which was intended or likely to deceive the dealer and was material to the lawfulness of the sale or disposition of the firearm in violation of 18 U.S.C. § 922(a)(6), an offense not capital, also in violation of Article 134, UCMJ.

cheated on JL with Appellant. JL continued, "This [had] a material impact on [MV's] mental health," and made her feel like her squadron turned against her, a feeling which caused MV to "cr[y] almost every night."

Appellant takes issue with multiple phrases trial counsel used in his sentencing argument. Specifically, he argues that trial counsel used the dismissed specifications to justify the sentence. We have italicized those portions of trial counsel's sentencing argument that Appellant highlights as improper argument. At the beginning of the argument, trial counsel stated:

> *This case is about [Appellant] trying to destroy [MV's] reputation*, because she had the audacity to be an adult woman who said no. She told him she did not want to participate with him, and he reacted by destroying and trying to destroy her reputation by sending images to people in her community, in the pilot community, in the instructor pilot community, to destroy her reputation.

As it relates to how Appellant may have obtained the photographs, trial counsel argued:

> Your Honor, pay close attention to the photographs specifically, and you have the redact -- the unredacted photographs in attachment three. That's the digital version. Attachment two has the redacted version, but pay attention to these. When he takes these photographs these photographs don't look like others. These photographs have lines on them. Use your common sense, knowledge of the ways of the world. That means they were taken -- he photographed them. You can see in the first image there's the black line, because he photographed the images. You see the lines in them.
>
> . . . .
>
> Your Honor, I request that you go and specifically look at the blown up version of her computer where he got that photograph of [MV] and her then boyfriend, [ ] and look through the images -- the other kinds of images [Appellant] had to look through to *steal* that photo -- to take that photograph.
>
> . . . .
>
> He got those from [MV] 12 hours later while she was in San Antonio. 12 hours later. What does that mean? He was either at her house for at least 12 hours, or did he enter her house when they weren't speaking, and then left, and then came back 12 hours later. *That is a huge violation of her trust and her privacy.*

As it relates to the phrase "gaslighting," Appellant claims that it was improper for trial counsel to argue:

> [MV] ends any sort of friendship with him. How does [Appellant] respond? He gas lights [sic] her. He explains I have no idea what you're referring to. He also threatens her and says he's going to send this list of every interaction they've had that is essentially her cheating.

Finally, Appellant takes issue with the reasoning behind trial counsel's request for severe punishment.

> [Appellant's] *intent* here of distributing those images, the *vindictiveness* with which he acted is incredibly important, and that deserves a *severe punishment*.
>
> . . . .
>
> As you look at the *intent*, Your Honor, please look at all of the attachments to the stipulation and consider his threat to [MV] to ruin her relationship with her boyfriend by sending the list, his claim to prove up his intimacy with the two when he sent them the images.
>
> . . . .
>
> As you look to the aggravating facts this is a course over months what he did. *Stealing the photos without her consent*, sending the photos, *continuing to claim things that are not true about [MV] and him*. That's why he deserves confinement to the maximum amount possible.

Trial defense counsel did not object during any part of trial counsel's argument which Appellant now raises as an appellate issue.

### 2. Law

We review allegations of improper argument and prosecutorial misconduct de novo. *United States v. Voorhees,* 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted). However, if the defense does not object to the argument by trial counsel, we review the issue for plain error. *United States v. Norwood*, 81 M.J. 12, 19 (C.A.A.F. 2021) (citation omitted).

To establish plain error, an "[a]ppellant has the burden of establishing (1) there was error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (internal quotation marks and citation omitted). "As all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006). "Appellant has the burden

of persuading this Court that there was plain error." *United States v. Barraza*[ *M*]*artinez*, 58 M.J. 173, 175 (C.A.A.F. 2003) (citation omitted).

"In his arguments, trial counsel may strike hard blows, [but] he is not at liberty to strike foul ones." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (alteration in original) (internal quotation marks and citation omitted). "[T]rial counsel [may] argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Id.* (internal quotation marks and citation omitted). "He may not, however, inject his personal opinions or inflame the factfinder's passions or prejudices." *Id.*

"Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be confident that [the appellant] was sentenced on the basis of the evidence alone." *United States v. Pabelona*, 76 M.J. 9, 12 (C.A.A.F. 2017) (alteration in original) (quoting *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014)). "Relief will be granted only if the trial counsel's misconduct 'actually impacted on a substantial right of an accused (i.e., resulted in prejudice).'" *Frey*, 73 M.J. at 249 (C.A.A.F. 2014) (quoting *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005)). In assessing prejudice from improper argument, we analyze: (1) the severity of the misconduct; (2) the measures, if any, adopted to cure the misconduct; and (3) the weight of the evidence supporting the conviction. *Fletcher*, 62 M.J. at 184. In some cases, "the third factor may so clearly favor the [G]overnment that the appellant cannot demonstrate prejudice." *Sewell*, 76 M.J. at 18 (citing *Halpin*, 71 M.J. at 480).

The United States Court of Appeals for the Armed Forces (CAAF) has identified five indicators of severity: "(1) the raw numbers—the instances of misconduct as compared to the overall length of the argument; (2) whether the misconduct was confined to the trial counsel's rebuttal or spread throughout the findings argument or the case as a whole; (3) the length of the trial; (4) the length of the panel's deliberations; and (5) whether the trial counsel abided by any rulings from the military judge." *Fletcher*, 62 M.J. at 184 (citation omitted). In *Halpin*, the CAAF extended the *Fletcher* test to improper sentencing argument. 71 M.J. at 480. In assessing prejudice, the lack of a defense objection is "'some measure of the minimal impact' of a prosecutor's improper comment." *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)).

Finally, "the argument by a trial counsel must be viewed within the context of the entire court-martial." *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F 2000). Thus, "[t]he focus of our inquiry should not be on words in isolation, but on the argument as viewed in context." *Id.* (internal quotation marks and citations omitted).

**3. Analysis**

Appellant argues that trial counsel's argument was improper because it was based on speculation, unproven allegations, and focused on Appellant's "vindictiveness." According to Appellant, "[a]ll of this goes beyond matters directly related to the offenses to which [Appellant] pleaded guilty; instead, it invokes the dismissed offenses to magnify the gravity of the remaining offenses." Since Appellant did not object to this argument, we review for plain error.

We first consider the argument concerning the trial counsel's use of the word "vindictiveness" and remark that this case is "about [Appellant] trying to destroy [MV's] reputation." By pleading guilty, Appellant admitted that he knew or reasonably should have known that by sending nude photos of MV, he would substantially harm MV's health, safety, career, reputation, or personal relationships which had a reasonably direct and palpable connection to a military mission or military environment. Appellant's stipulation of fact explains that he did not send out the nude photos of MV until he was messaging a co-worker who was attempting to dissuade Appellant from seeking a relationship with MV because MV was already in a relationship. Based on this admission, we find that trial counsel drew a reasonable inference that Appellant sent the nude photos because he was angry with MV who was in a relationship with someone else. Likewise, trial counsel drew a reasonable inference that the goal behind Appellant's actions was to affect MV's relationships and social standing. This inference was supported by testimony that MV's reputation within the fighter pilot community was, in fact, impacted across multiple military installations. We find that trial counsel's argument was based on both the evidence in the record, as well as the reasonable inferences fairly derived from the evidence. As such, we do not find error in this argument.

We next review the argument concerning trial counsel's comments regarding how Appellant may have obtained the photographs. We also find that the trial counsel's argument was a reasonable inference from the evidence. Although he never admitted to taking the photographs from MV's laptop, the evidence showed that the photos were taken from her laptop (likely photographed from her laptop screen) and were later found on Appellant's phone. The dates when the photographs appeared on Appellant's phone correspond to those days when MV was away from her home, when the laptop was at her house, and when Appellant was in her house. Therefore, we do not find error in this argument.

As to trial counsel's argument concerning Appellant "gaslighting" MV, Appellant does not explain how this was improper argument or how it related to one of the dismissed specifications. We find that trial counsel was properly

arguing evidence that was presented during Appellant's court-martial. Specifically, this argument was directly supported by the evidence in the stipulation of fact. After MV confronted Appellant about the photos, he first claimed that he had no idea what she was talking about, then told her that she made it up, in her head. He also claimed that it was actually MV who had feelings for him and that he was the one who needed space from her. Based on this, we find that trial counsel was appropriately arguing the evidence in the record. Thus, we find no error in this argument.

Finally, we consider trial counsel's request for "severe punishment." According to Appellant, "this goes beyond matters directly related to the offenses to which [Appellant] pleaded guilty; instead, it invokes the dismissed offenses to magnify the gravity of the remaining offenses." We disagree. When trial counsel argued for "severe punishment" and asked the military judge to "look at the intent," trial counsel pointed the military judge to the evidence in the record relating to the convicted offense. Trial counsel specifically stated, "As you look at the intent, Your Honor, please look at all of the attachments to the stipulation." These attachments include the text messages between Appellant and MV in which he threatens to talk to MV's boyfriend and accused her of "making stuff up in [her] head." As such, we do not find error in this argument.

Because we do not find any of the arguments improper, we do not reach the remaining two prongs of plain error analysis.

## C. Sentence Severity

Appellant claims his sentence to a dismissal is inappropriately severe in light of: (1) the five months of confinement adjudged; (2) his contributions to the Air Force; and (3) his rehabilitative potential. We disagree.

### 1. Additional Background

Appellant points to the following matters in mitigation: Appellant served with distinction as a combat aviator; he had a critical role as part of a team that defeated ISIS in Northeast Iraq; he volunteered to take on a full deployment as opposed to a half deployment because the squadron he served had manning issues; he had no children and wanted to deploy to help others who had children; when he made mistakes, he turned them into opportunities to teach others so that these mistakes would not be repeated; and, overall, his "sentencing [evidence] reflected his six years of meritorious service with Special Operations."

The record also shows that Appellant's misconduct had a significant and deleterious effect on MV, both personally and professionally. JL, MV's boyfriend, testified that he observed the negative impact on MV stemming from

Appellant's crimes. The examples JL gave paint a picture of a young woman living in fear and distress:

> [MV] feared for her life over the last year. Starting when she left her home here in Del Rio and started living with friends out of a suitcase. She gave me her two cats for fear that [Appellant] would break into her home and try to kill them for her.

JL continued that MV "feared for her life" when she found out that Appellant unlawfully attempted to purchase a firearm; that she had elevated stress levels; and that her reputation in the fighter pilot community was negatively impacted.

For her part, MV provided a victim impact statement in which she told the military judge that not a day goes by where she does not think about what Appellant did to her. She explained that after she found out that Appellant distributed her nude photos, she "no longer felt safe in [her] own home." Even with "[a] new security system, new locks, multiple video cameras, watchful neighbors, a gun, nothing made [her] feel safe enough except leaving." She stayed with friends during the weekdays, traveled to Holloman AFB, New Mexico, almost every weekend, and never stayed in her home alone again.

MV also told the military judge that Appellant sent her nude photos to her friends; that after receiving the photos, these friends stopped talking to her and started gossiping behind her back; and that Appellant's lies "spread [and] turned the squadron that [she] held so near for so many years into hell on earth."

In her statement, MV also addressed Appellant directly:

> The extent to which you assassinated my character in the squadron and across the Air Force was horrifying. A friend from across the country at a different base told me that he had heard people talking about my nude photos. To say that I was devastated doesn't do it justice. I stopped being me. I wasn't happy to go to work. I didn't want to get out of bed. I didn't want to see anyone.

MV concluded her victim impact statement explaining that when she learned that Appellant lied during a firearm purchase, she "felt so unsafe that [she] decided to get a civilian protection order[, and that t]his has been the darkest tunnel [she has] ever faced."

**2. Law**

This court reviews issues of sentence appropriateness de novo. *See United States v. McAlhaney*, 83 M.J. 164, 166 (C.A.A.F. 2023) (citing *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006)). Our authority "reflects the unique history

and attributes of the military justice system, [and] includes . . . considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only so much of the sentence as we find correct in law and fact. Article 66(d), UCMJ, 10 U.S.C. § 866(d). In reviewing a judge-alone sentencing, we "must consider the appropriateness of each segment of a segmented sentence and the appropriateness of the sentence as a whole." *United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024).

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although the Courts of Criminal Appeals are empowered to "do justice" we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (citation omitted). In the end, "[t]he purpose of Article 66[ ], UCMJ, is to ensure 'that justice is done and that the accused gets the punishment he deserves.'" *United States v. Sanchez*, 50 M.J. 506, 512 (A.F. Ct. Crim. App. 1999) (quoting *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988)).

R.C.M. 1003(b)(8)(A) explains that regardless of the maximum punishment specified for an offense "a dismissal may be adjudged for any offense of which a commissioned officer . . . has been found guilty."

"Absent evidence to the contrary, [an] accused's own sentence proposal is a reasonable indication of its probable fairness to him." *United States v. Cron*, 73 M.J. 718, 736 n.9 (A.F. Ct. Crim. App. 2014) (quoting *United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979) (citation omitted)). When considering the appropriateness of a sentence, courts may consider that a pretrial agreement or plea agreement, to which an appellant agreed, placed limits on the sentence that could be imposed. *See United States v. Fields*, 74 M.J. 619, 625–26 (A.F. Ct. Crim. App. 2015).

**3. Analysis**

Appellant claims that the dismissal is inappropriately severe given the five months of confinement. He makes three arguments. First, he argues that he "did not publicly distribute the [nude] images [of MV] to a website or other more broadly accessible platform." Second, he argues that he had a strong sentencing case. Third, he claims he has strong rehabilitation potential.

We have considered that while awaiting his court-martial, Appellant volunteered with a local organization aiding families affected by domestic violence and sexual assault; that he attended counseling; that he acknowledged wrongdoing; Appellant's military service and deployments. We

also considered the lasting impact of the dismissal in accessing the severity of the sentence adjudged. We weigh these factors in mitigation against the lasting impact Appellant's misconduct had on MV. It is clear from the record that Appellant's crimes changed her entire life and career. Additionally, we do not find Appellant's argument that he did not post MV's nude photos on the Internet to be compelling extenuation or mitigation; the intimate nature of this crime does not make it any less severe. Appellant sent those photos to his coworkers who were also MV's coworkers and her friends, making this crime more personal compared to making these photos available to strangers.

Based on our individualized consideration of Appellant, his character, his service record, and the nature and seriousness of the offenses, we find the sentence, including the dismissal, is not inappropriate in this case.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. *See* Articles 59(a), 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court